## BALDWIN, ET AL., v. McDONALD.

(No. 855; Decided April 4th, 1916; 156 Pac. 27.)

AMENDMENT—PLEADING—TIME FOR ANSWER—AMENDMENTS IN FUR-
THERANCE OF JUSTICE—MOTION FOR DEFAULT—DEFAULT—DISCRE-
TION — CONTINUANCE — ADMISSIONS — ABSENCE OF EVIDENCE IS
GROUND FOR CONTINUANCE— TRIAL— TIME— JURY— DEMAND FOR
JURY TRIAL—STATUTORY CONSTRUCTION—LANDLORD AND TENANT—
QUIETING TITLE—VENDOR AND PURCHASER—REMEDIES OF VENDOR—
FORECLOSING VENDOR'S LIEN—JUDGMENT—CONSTRUCTION—SALE OF
LAND—STRICT FORECLOSURE OF LIEN—FORM OF JUDGMENT—JUDG-
MENT SUPPORTED BY PLEADINGS—EVIDENCE—ADMISSIONS IN COURT
—DEFICIENCY JUDGMENT—AMOUNT DEMANDED—MORTGAGES—EF-
FECT OF DEED AND CONTRACT TO RECONVEY—EXECUTORY CONTRACT—
RECEIVER.

1. The mere filing of a motion for leave to amend a petition
and giving notice thereof, does not operate to extend the
time for answer, Comp. Stats. 1910, Section 4434, having
no application.

2. Under Comp. Stats. 1910, Section 4437, the court in its dis-
cretion, may, upon proper terms and in furtherance of
justice, deny a motion for default and allow further time
within which defendant shall be permitted to answer.

3. In a foreclosure suit where plaintiff's motion to amend his
petition by interlineation, which had been on file for nearly
a month, was granted and plaintiff's motion for default
denied, a ruling that defendant answer by 3 o'clock on
the same day, was not an abuse of discretion.

4. Under Comp. Stats. 1910, Section 5139, providing that, upon
motion to postpone trial for absence of evidence, if the
adverse party will consent that the absent witness will tes-
tify to the facts stated in the supporting affidavit as true,
the trial shall not be postponed for such cause, defendant's
motion for continuance or postponement for absence of
evidence was properly overruled, where plaintiff offered to
admit that the absent witness would testify as stated in
the affidavit.

5. In a vendor's suit to foreclose as a mortgage the written
contract of sale, where plaintiff's amendment to his peti-
tion by interlineation was material only as to the question
of the appointment of a receiver for the premises, as it
alleged that defendants were insolvent, and plaintiff ad-
mitted that an absent defendant would testify that he was
not insolvent, the action of the court in setting the cause
for trial on the day of the amendment was proper.

6. Where in a vendor's suit to foreclose as a mortgage a contract of sale, plaintiff's motion for default was overruled and defendant required to answer by 3 o'clock of the same day, defendants' failure to file with the clerk a written demand for trial by jury with a deposit of the proper fee by that time, as required by Comp. Stats. 1910, Section 4514, as amended by Laws 1915, Chapter 66, Section 1, operated as a waiver of defendant's right to trial by jury.

7. Under Comp. Stats. 1910, Section 4964, requiring plaintiff in an action to quiet title to allege and show he is in possession, either by himself or a tenant, in an action by a vendor to foreclose as a mortgage the contract of sale, which provided that, upon default, defendants should hold the premises merely as tenants of the plaintiff, plaintiff was not entitled to judgment quieting his title, the statute not permitting a landlord to maintain an action against his alleged tenant in possession and claiming an estate adverse to him.

8. In a vendor's suit to foreclose as a mortgage the contract of sale, judgment that the title in and to the land was forever quieted in the plaintiff, that the defendants were forever foreclosed from any right, title, or interest in the land, and ordering that plaintiff have immediate possession, and that a writ of possession issue to him therefor, was not a judgment quieting title, but one based upon equitable principles, foreclosing the right and equity of defendants in the land, awarding possession as an ancillary equitable remedy to enforce the decree of foreclosure, proper in the ordinary foreclosure proceeding.

9. In equity, the vendee of land is treated as the beneficial owner, and the vendor as owner of the purchase money, becoming, as to the land, trustee for the vendee, subject to the latter's performance, and the vendee, as to the purchase money, trustee for the vendor, who has a lien on the land or the vendee's equitable estate.

10. In a vendor's suit to foreclose his lien, or right to enforce his claim for the purchase money against or out of the vendee's equitable estate, a judicial sale is not necessary to transfer title, but the equitable interest of the vendee may be declared forfeited and foreclosed. However, it would not be improper to order a sale as on foreclosure of a mortgage, if the court should deem that the more equitable manner of granting the relief under the circumstances of the case.

11. In a vendor's action to foreclose as a mortgage the contract of sale, judgment quieting plaintiff's title and putting him in possession, appearing to have been formed upon the theory of strict foreclosure of a mortgage, but failing to allow defendants any time in which to pay the amount due, was improper, since the proper form of such a decree is to require the defaulting party to pay the amount due within a reasonable time, to be fixed by the court in the exercise of its sound discretion, or to be forever barred of the right of redemption.

12. In a vendor's suit to foreclose as a mortgage the contract of sale, where defendants' counsel admitted that, when a deed back was made by defendants to plaintiff, it was intended that the title should pass to plaintiff, and that the parties made a contract of conditional sale, which admission was intended and understood by opposing counsel and the court, to refer to deed and contract mentioned, such admission brought into evidence the deed and contract, as it had the effect of a confessory pleading.

13. In a vendor's suit against his vendees, where plaintiff prayed relief on the theory that the transaction was a mortgage, and the petition alleged that defendants' deed back to plaintiff and the written contract of sale were executed to secure the payment of the purchase money indebtedness, judgment, decreeing strict foreclosure of plaintiff's lien on the land, had support in the pleadings.

14. Where by the contract of sale of land and the buyers' deed back to the seller, absolute title remained in the seller, the latter, foreclosing his lien against the buyers in default, is not entitled to a personal or deficiency judgment.

15. The fact that a plaintiff prays for more than he is entitled to does not forbid granting of the relief he is shown to be entitled to, consistently with the facts alleged.

16. A deed by the buyers of land back to the seller, and his contract to reconvey upon payment of the purchase price, may be executed under such circumstances that they will not constitute a mortgage.

ERROR to District Court, Park County; E. C. RAYMOND, Judge.

Action by Angus J. McDonald against John M. Baldwin and Virena Baldwin to foreclose as a mortgage a deed absolute on its face and a contract between the parties for a reconveyance upon payment of a loan made at the time.

From a judgment for plaintiff, defendants bring error. Other material facts are stated in the opinion.

*Charles L. Brome, H. W. Rich* and *Thomas M. Hyde,* for plaintiffs in error.

After amendment of petition by leave granted on motion, defendants were entitled to the same time to answer or plead as is allowed for answer to an original petition. (Section 4434 Comp Stats. 1910; Neininger v. State, 50 O. S. 394, 34 N. E. 633.) For that reason the court erred in setting the cause for trial on the date of the amendment of the second amended petition. Defendants were entitled to a jury trial; under subdivision 4, Section 4514 Comp. Stats. 1910, as amended Laws 1915, Chapter 66, a written demand for a jury with a deposit of the proper fee filed on the same day as the answer is within time. Plaintiff's action while in form one in equity was followed by a judgment in eject-ment; under the pleadings there was no authority for the rendition of a judgment in ejectment. (Sache v. Wallace, 101 Minn. 169, 11 Ann. Cas. 349.) The court was limited to the issues made by the pleadings. (McFadden v. Ross, 108 Ind. 512, 8 N. E. Rep. 161.) Upon the failure of the foreclosure action, the court lost jurisdiction. (Sandoval v. Rosser, 26 S. W. 932; Dunlap v. Southerlin, 63 Tex. 38; Ritchie v. Sayer, 100 Fed. Rep. 520; Waldon v. Harvey, 54 W. Va. 608, 46 S. E. 603, 102 Am. St. Rep. 950; Wat-kins Land Mortg. Co. v. Mullin, 8 Kan. App. 705, 54 Pac. Rep. 921; 21 Cyc. 684.) Jurisdiction of the subject matter is essential to the validity of the judgment. (Newman v. Bullock, 25 Colo. 217, 47 Pac. 379; Johnson v. Johnson, 20 Colo. 143, 37 Pac. 898.) Plaintiff did not pray for pos-session of the lands, hence the court exceeded its jurisdic-tion. (94 Minn. 150, 102 N. W. Rep. 381; Alexander v. Thompson, 101 Minn. 5, 111 N. W. Rep. 385.)

*E. E. Lonabaugh, W. L. Walls* and *W. E. Mullen,* for defendant in error.

The amendment of plaintiff's petition was made by leave of court; after the legal time for answer or plea has ex-

pired, the fixing of time for filing further pleadings lies in the discretion of the court; Section 4434 Comp. Stats. 1910 does not apply; the application for continuance on the ground of absent witnesses was properly denied as plaintiff admitted that the absent witnesses, if present, would testify to the facts alleged in the affidavit; the application for a jury trial was properly denied, not having been filed at the time of filing of answer. (Chapter 66, Laws 1915.) Defendants were not entitled to a jury trial, the action being in equity; the admission made by defendants in open court that the deed was intended to be absolute rendered a finding that defendants retained any interest in the land unnecessary; the evidence established that no payments whatever had been made under the contract of sale. Conceding that the relief varied from the prayer of the petition is immaterial. (Sections 4591, 4592 and 4593 Comp. Stats. 1910.) Defendants were not misled by the proof; it was their own solemn admission that brought about the decree. Amendments in furtherance of justice are permissible. (Section 4437 Comp. Stats. 1910.) An amendment changing the action of foreclosure to one for the cancellation of the contract could have been allowed. (Gibson v. Morris State Bank, 140 Pac. 76) ; the sufficiency of the evidence to support the decree is not questioned; hence, an amendment to conform the pleadings to the decree should be deemed to have been made. Plaintiff was in possession of the lands involved by tenant; the contract provides that after default defendants should hold as tenants; hence, plaintiff might sustain an action to quiet his title. (Section 4964 Comp. Stats. 1910.) The court having acquired jurisdiction had authority to grant complete relief. (Bliss on Code Pleading, 2nd Ed. Sec. 166, 167 and 168.) The admission by defendants that the conveyance was intended to be absolute was apparently made for the purpose of defeating the action and requiring the commencement of a new action in ejectment; it was proper to direct the writ of possession to issue. (Oberien v. Wells, (Ill.) 45 N. E. 294; Harding v.

Fuller, 30 N. E. 1055; Pitts Copper Co. v. O'Rourke, (Mont.) 141 Pac. 849.) Relief will be granted under a general prayer, although the prayer for special relief must be denied. (Gillet v. Clark, 9 Pac. 823; Davis v. Davis, 23 Pac. 715; Anaconda Copper Mining Co. v. Thomas, 137 Pac. 380; Davis v. Gibbs, 48 N. E. 120; Central Inp. Co. v. Cambria Steel Co., 210 Fed. 696; Maring v. Mecker, 105 N. E. 31; 16 Cyc. 225, 487; 16 Cyc. 488; Mock v. Santa Rosa, 58 Pac. 826; Calif. Oliver v. Blair, 8 Pac. 612; U. S. Health and Accident Co. v. Emerick, 103 N. E. 435.) The question of amendment was set at rest in Kuhn v. McKay, 7 Wyo. 42. A defendant will be estopped by his admissions from making a claim contrary thereto and inconsistent therewith. (Boston E. R. Co. v. Paul Boynton, 211 Fed. 812.)

*Charles L. Brome, H. W. Rich* and *Thomas M. Hyde,* in reply.

No notice was given that Judge Raymond would appear at Cody for a disposition of the case on June 18th, 1915. Defendants cannot deprive plaintiff of his right to additional time to answer by amending his petition by leave of court. The application for continuance was predicated upon the absence of defendants, who were misled as to the time the cause could be reached for trial, and not upon the absence of witnesses. Chapter 66 Laws 1915 clearly contemplates that an application for a jury trial made on the day of filing answer shall be any time; that defendants were entitled to a jury trial is made apparent by the order and judgment entered. The sections cited on the subject of variance do not apply where the relief granted is wholly inconsistent with the pleadings. Gibson v. Morris State Bank cited by counsel is not in point, as the question there was the sufficiency of the evidence and not the sufficiency of the pleadings. The suggestion made that the admission with reference to the character of the conveyance was made in bad faith is unwarranted; the record shows that defendants were merely seeking a reasonable opportunity to

present their defense. It was error for the trial court to
create a new issue and to grant relief not prayed for in the
petition; the citation of Section 4964 Comp. Stats. 1910 to
show that plaintiff had a right to bring an action to quiet
title is immaterial for the reason that plaintiff brought no
such action. The citations from Bliss on Code Pleading do
not sustain counsels' position, nor do the cases of Oberien
v. Wells, (Ill.), 45 N. E. 294; Hardin v. Fuller, 30 N. E.
1055; Pitts Copper Co. v. O'Rourke (Mont.), 141 Pac.
849, or any of the other authorities presented to sustain this
decree. It is true that a general prayer for relief will be
granted though there is a special prayer, which must be
denied, but the general prayer must be supported by the
allegations and proof. (Central Imp. Co. v. Cambria Steel
Co., 210 Fed. 696; 16 Cyc. 225, 487 and 488; Ellis v. Hill,
44 N. E. 858; Oliver v. Blair, 8 Pac. 612.) McFadden v.
Ross sustains our exact contention and we find no authority
taking a contrary view.

POTTER, CHIEF JUSTICE.

This action was brought in the District Court in Park
county by Angus J. McDonald against John M. Baldwin and
Virena Baldwin to foreclose as a mortgage a certain writ-
ten contract between the parties for the sale to the de-
fendants of 880 acres of land situated in said county, and
to recover the amount of the purchase price and interest
therein agreed to be paid and evidenced by a promissory note
with three annual interest coupon notes thereto attached.
Incidentally the petition contained averments in support of
and a prayer for the appointment of a receiver to take pos-
session of the lands, cultivate the same and collect and re-
ceive the rents and profits thereof, it being alleged that the
defendants are in possession. An amended petition was
filed alleging that for the purpose of securing the payment
of the indebtedness represented by said note the defendants
duly made, executed and delivered to the plaintiff their
certain deed of general warranty conveying the said lands
to the plaintiff, which was duly recorded in the proper

office; and that as a part of the transaction and contemporaneous therewith the said parties, plaintiff and defendants, entered into the contract aforesaid, which is set out in full in the original and amended petitions. That defendants had failed and refused to make the payments as required by the contract and the note, and that the whole amount had become due, according to the terms of the contract and note, and remained unpaid, was alleged in each petition; also that certain taxes assessed and levied against the lands had been paid by the plaintiff, the defendants having failed and neglected to pay the same as required by the contract, and judgment was prayed for the amount thereof in addition to the amount due upon the note.

The original petition alleged the contract to be in truth and in fact a mortgage, and the amended petition aforesaid alleges that the deed and contract were made and entered into as security for the payment of the indebtedness represented by the said note. Upon a trial judgment was entered in favor of the plaintiff, foreclosing all the right, title and interest of the defendants in and to the said lands, quieting the plaintiff's title thereto, awarding him immediate possession, and directing that a writ of possession issue for that purpose. The defendants have brought the case to this court on error.

Several errors are assigned relating to the proceedings anterior to the trial. The original petition was filed on April 14, 1915, and thereupon a summons was issued and duly served upon the defendants requiring them to answer on or before May 15, 1915. By an order entered April 17, a receiver was appointed and the defendants required to surrender possession of the lands to him within ten days after the service of a copy of the order upon them, and on April 23, 1915, the cause again came before the court for hearing on the motion of the defendants to vacate the order appointing a receiver, which motion was on that day sustained, and the receiver discharged; the order reciting that each of the defendants were present in person and by counsel. By an-

other order of the same day the plaintiff was granted leave
to file an amended petition in the cause, and on that day an
amended petition was filed. On May 11, 1915, an order
was entered granting leave to the plaintiff to and including
that date to file another amended petition, and the defend-
ants were given until June 11 in which to answer or other-
wise plead to such new amended petition, and the plaintiff
until June 20, 1915, in which to reply; and the hearing upon
plaintiff's application for the appointment of a receiver was
set for hearing on May 27, 1915. No exception appears to
have been taken to that order, and no objection is here
urged against it. The "second amended petition" was filed
the next day—May 12, 1915. On the 19th day of the same
month the plaintiff filed a motion for leave to amend said
second amended petition by interlineation by adding at the
end of a certain paragraph the allegation that the defendants
and each of them are insolvent, and on the same day also
a notice directed to the defendants and their attorneys that
said motion would be presented to the court at a stated hour
on May 24, 1915, or as soon thereafter as counsel can be
heard. It does not appear that such motion came on for
hearing at the time stated in the notice or that the applica-
tion for a receiver was heard or presented on May 27, the
time set therefor in the order of May 11. But on May 28,
1915, the defendant, John M. Baldwin, filed an affidavit for
a change of judge, such affidavit appearing to have been
sworn to on May 7, and the corroborating affidavit on May
8, 1915. The order, if any, made upon that application is
not in the record here, but presumably the application was
granted, and the fact seems to be conceded, and that Judge
Raymond of the Seventh District was called in to preside
in the further hearings in the cause. No other proceedings
were had, so far as the record shows, until June 18, 1915,
when, with Judge Raymond presiding, without any objection
to that judge presiding, the following occurred:

By a journal entry of that date it appears that the cause
then came on for hearing on the motion of the plaintiff for

default against the defendants because of their failure to answer within the time fixed by the court, viz.: · June 11, 1915, and that said motion was overruled; that plaintiff's application to amend his second amended petition 'by inter-lineation then came on to be heard and leave was given to amend in accordance with the motion—evidently the motion aforesaid filed on May 19th; that the defendants were given until 3 o'clock p. m. of that day to file their answer to said second amended petition, and to that part of the order the defendants excepted; that the cause came on further to be heard on that day on the application of the defendants for a continuance, supported by affidavit, that part of the order reciting that the affidavit alleged the absence of the defend-ant John M. Baldwin and the facts to which he would tes-tify if present, and that the· plaintiff offered to admit that said Baldwin would testify to such facts, and thereupon the motion for continuance was overruled and the defendants excepted and then filed their answer. The answer so filed is in the record and it is confined to a general denial of the allegations of the petition. The same order finally recites that the cause came on further to be heard on plaintiff's application to set the same for trial on the merits and on the application for the appointment of a receiver, and that the cause was thereupon set for trial on said application and on the merits at 7:30 o'clock in the evening of said day. The defendants excepted to the denial of their motion for a continuance and also to setting the case for trial. By another order entered on the same day it appears that the cause again came on for hearing on the demand of defend-ants for a jury trial, which was denied on the ground that the demand was not filed in time and the cause was one in equity wherein the defendants were not entitled to a jury trial as a matter of right, and it was ordered that the cause be proceeded with in accordance with the previous order aforesaid, to which the defendants excepted. The trial ap-pears to have occurred at the time fixed as above stated, resulting in the judgment aforesaid. Error is assigned

upon the action of the court in requiring the defendants to answer at the time stated, denying the motion for continuance and setting the case for trial, and denying the application for a jury trial. These matters will be taken up in the order of their occurrence.

1. It is contended that the defendants were not allowed the statutory time in which to answer, counsel relying upon the provisions of Section 4434, Compiled Statutes, 1910, which provides that the plaintiff may amend his petition without leave at any time before answer is filed, but that notice of such amendment shall be served upon the defendant or his attorney, and that the defendant shall have the same time to answer or demur thereto as to the original petition. It is argued that the time to answer the second amended petition had not expired on June 18 and that the defendants would not have been in default for such answer until June 20th, and that when the amendment by interlineation was allowed and made on the 18th of that month the defendants were given by the section aforesaid the same time to answer as to an original petition, claiming such time to be, as we understand the argument, the third Saturday following the second Monday after such amendment was made.

The argument that the time for answering the amended petition filed on May 12 had not expired is unreasonable and fallacious. It seems to be based upon the theory that the filing of the motion on May 19th for leave to amend by interlineation and notice thereof suspended or postponed the time for answer and that such time would run from the date the motion was filed and would not have expired until Saturday, June 19. But it is clear that the mere filing and notice of such a motion could not have any such effect; the answer day remained June 11, as fixed by the order of May 11, or not later than June 12, if the second amended petition is to be considered as filed without leave on May 12, for the third Saturday following the second Monday after such petition was filed was June 12. Indeed,

it is not certain but that the answer day, considering said amended petition as filed without leave, would have been May 29th, the third Saturday after the pleading was filed. In the only case in Ohio where such a matter seems to have been considered an amended petition was filed on leave granted on the first of December and the case set for trial on the 8th of the same month, and complaining of that action the defendants, it appears, claimed only that the statutory time for answer under the section from which our Section 4434 was taken was the third Saturday after the date of filing the amended petition. (Neininger v. State, 50 O. St. 394, 34 N. E. 633, 40 Am. St. Rep. 674.) But we are not called upon to decide that precise question, and will assume for the purposes of the case that under Section 4434 the time for answering an amendment to a petition without leave before answer filed would be the third Saturday following the second Monday from the date of the amendment, all that could possibly be claimed under the most liberal construction of said section. We find no authority and see no reason for holding that the mere filing of a motion for leave to amend a petition and giving notice thereof suspends or extends the time for answer. It may be that because of the mistaken reliance of counsel upon the theory that the motion had suspended or postponed the time for answer the court concluded to relieve defendants of the consequences of their default, or for other reasons deemed satisfactory that the case was a proper one for the exercise of discretion to permit an answer to be filed notwithstanding such default. We think it cannot reasonably be doubted, however, that the defendants were required by statute, if not by the order of May 11th, to answer said petition not later than June 12th, and that not having done so they were in default, so that when the motion for default was overruled the time when the defendants should be permitted to answer was within the court's discretion.

In view of the proceedings in this case, Section 4434 is not applicable. Conceding that since no answer or other

pleading had been filed and no motion in place thereof the plaintiff might have amended his petition on June 18th without leave, and thereby made the provisions of said section applicable, the amendment was not so made, but upon leave granted by the court, and did not change the cause of action, but merely added an averment in support of the prayer for a receiver pending the foreclosure proceedings. The provision of the statute applicable in such case is found in Section 4437, which provides that the court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading "by inserting other allegations material to the cause." Where an amendment is so made the statute fixes no time for answer, but leaves the time for the defendant to plead within the discretion of the court. (Neininger v. State, *supra;* 1 Kinkead's Code Pl., Sec. 67, p. 73; 1 Bates Pl. Pr. Par. & Forms, p. 533.) Although the defendants had not filed a pleading or motion directly assailing the form or sufficiency of either petition they had appeared in the action, first by moving for and securing the vacation of the order appointing a receiver and his discharge, and second by filing affidavits for a change of judge, if they were not also present either in person or by counsel when the order of May 11th was made granting leave to file the second amended petition and fixing the time for pleading thereto; and they appeared by counsel, as we understand the record, when the motion for default was heard and overruled, leave granted to amend, and time given to answer. To hold under these circumstances that because no answer had been filed, although the appointed time therefor had expired, the plaintiff could not amend as proposed by his motion upon leave granted to do so without giving the defendants the full time prescribed by statute for answer to an original petition would extend the provisions of Section 4434 beyond what was clearly intended thereby, and allow defendants to take advantage of their default by securing an unnecessary postponement of the hearing of the case. The

defendants and their counsel could not have been surprised by the amendment, for the motion had been on file nearly a month, and it is not claimed they were surprised thereby; and no reason is perceived why they should not have been prepared to answer when they were permitted or required to do so. Hence there seems to be no ground for holding that the court abused its discretion in fixing the time for answer.

2. It does not seem to be seriously contended that the court erred in denying a continuance upon the grounds stated in the motion therefor, but rather that the cause was improperly set for trial at a time when it was impossible for the defendants to be present. Neither of the defendants was present in person on June 18th, but they were represented by counsel. The reason stated in the motion for a continuance was that one of the defendants, John M. Baldwin, was severely afflicted with rheumatism and was then at Thermopolis hot springs for treatment and that it would be dangerous to his health if he were forced to attend the court for the purpose of trial at that time. The motion was supported by an affidavit of one of the attorneys for defendants. It was stated in the affidavit that the affiant was notified on June 14, 1915, of the cause being set down for hearing (presumably for June 18) and that he immediately notified the defendants at their home in Park County and requested their appearance in court "at this time"; that on the morning of June 17th Virena Baldwin informed affiant by telephone that her husband, John M. Baldwin, was being treated for rheumatism at Thermopolis and that it would be dangerous to his health for him to leave there "at this time"; that the said defendant is the principal witness in the case and his evidence is material; that the affiant can and will prove by said defendant that he is not insolvent and that the allegations in the second amended petition are untrue; that it was impossible "at this time" for the defendant, Virena Baldwin, to appear in court for the reason that she was alone at the ranch home and was not able herself to drive the distance required—45 miles—to attend

the hearing. There are other statements in the affidavit usually incorporated in an affidavit for continuance on account of absent evidence as required by statute, and the affiant also stated that he was ready and willing to proceed with the trial as soon as the said Baldwin would be able to appear in court, and that he believed said defendant could appear on or about July 1, 1915.

The plaintiff having offered to admit that said defendant would testify to the facts stated in the affidavit, the motion for continuance was overruled pursuant to the statute providing that upon a motion to postpone the trial of a cause on account of the absence of evidence, if the adverse party will consent that the absent witness will testify to the facts stated in the supporting affidavit as true, the trial shall not be postponed for that cause. (Comp. Stat. 1910, Sec. 5139.) The motion for continuance or postponement on the ground of the absence of evidence was, therefore, properly overruled. The answer was then filed, and the cause was set for trial on motion of the plaintiff as above stated. The assignment of error based upon that action of the court is in these words: "That the court erred in forcing defendants to trial on the same day that plaintiff amended his second amended petition." As above stated, the amendment was material only upon the question of the appointment of a receiver, and because of plaintiff's admission that the defendant, John M. Baldwin, would testify that he was not insolvent, the defendants would have the benefit on the trial of that testimony disputing the fact alleged by the amendment, a sufficient reason, we think, for declining to hold that it was error to set the cause for trial on the ground that the petition had on that day been amended as aforesaid. But the motion for leave to make that amendment having been on file since May 19th the defendants could not have been surprised. Two terms of court in each year in said County of Park are prescribed by statute, beginning on the second Monday in May and the second Monday in November respectively. (Laws 1913, Ch. 129, Sec.

1.) The proceedings of June 18th aforesaid occurred during the May 1915 term, and under the provisions of the statute the cause was triable at that term, the issues having been made up during the term. (Comp. Stat. 1910, Sec. 4458, as amended by Laws 1915, Ch. 69, Sec. 1.)

The trial court was in a better position than this court is to determine as to the good faith of the absence of the defendants, and whether further time should be granted to allow either of them to attend the trial; though we think there might be discerned in this record indications of a disposition on the part of the defendants to delay the proceedings as much as possible, and without any suggestion of a valid defense on the facts, except by the general denial of the answer, and the statement in the affiidavit for continuance that it could and would be proven by one of the defendants that the allegations of the second amended petition are untrue, the sufficiency of which as a statement of facts expected to be proved by an absent witness is very much to be doubted. The holding in reserve of the affidavits for change of judge might be regarded as indicative of a purpose to delay the cause, for, although prepared and sworn to prior to May 11, they were not presented on that date when the order was entered allowing the amended petition to be filed and fixing the time for pleading thereto, nor until about the time set for the hearing on the application for a receiver. We are unable to say that the court abused its discretion in setting the cause for trial upon the merits, or on the whole record that such action was prejudicial to the rights of the defendants.

3. The bill of exceptions shows that on the said 18th day of June the defendants filed a written demand for a jury trial, but without stating at what time in the day it was filed or whether or not it was filed at the time of filing the answer. But the judge's certificate allowing the bill states the bill does not show the fact that the demand for jury was not filed until some time after answer was filed and

after the cause had been set for trial at a certain hour, and the bill was certified as true subject to that exception.

The statute provides: "It shall be the duty of the defendant, if he desires a jury trial, at the time of filing his answer, and of the plaintiff, if he desires a jury trial, at the time of filing his reply, or, if no reply be required, then within the time in which a reply is permitted, to file with the clerk of the court a demand in writing for a trial by jury, and a failure to make such demand, accompanied with a deposit of twelve dollars as a jury fee, shall be deemed a waiver of a trial by jury." (Laws 1915, Ch. 66, Sec. 1, amending Sec. 4514, Comp. Stat. 1910.) The order of said date denying the demand recites that it appearing to the court that said application for a jury trial was not filed at the time of filing the answer, but after the answer had been filed, and it further appearing that the action is one in equity for the foreclosure of a mortgage and the appointment of a receiver, the court finds that the demand for a jury trial was not filed in time and further that the defendants are not entitled to a jury trial as a matter of right. It is contended in support of the exception to the ruling that the defendants were entitled to the whole of the day in which they were required to file an answer to file a demand for a jury trial.. Whatever the rule might be where a defendant has the entire day in which to answer we think the statute cannot be construed as extending the time for filing such demand by a defendant beyond the time fixed for filing the answer, or beyond the stated hour or time of the day that the answer is required to be filed. It seems to be the intention of the statute that the two acts,—the filing of the answer and the filing of a demand for jury trial—shall be concurrent, though it might, perhaps, reasonably be held that where the defendant has the entire day in which to file his answer the two acts will be concurrent within the meaning and intent of the statute if the answer and such demand are both filed on that day, or on the same day within the time allowed. For the reason that the demand was not

filed within the time required by the statute it was properly refused. It is therefore unnecessary to consider the other ground upon which the demand for jury trial was denied, viz: that the action was one in equity. But without deciding that question we think it proper to call attention to the decisions of other states having our code provision that "issues of fact arising in actions for the recovery of money only, * * * * shall be tried by a jury unless a jury trial be waived, or a reference be ordered * * * *," (Comp. Stat. 1910, Sec. 4453), holding that in a foreclosure action where personal judgment for the money due is sought against the defendant, and issue is joined thereon, the defendant is entitled to a jury trial; it being said in some of the decisions that the equitable action of foreclosure is in such case converted into a legal action. (Keller v. Wenzell, 23 O. St. 579; Clemenson v. Chandler, 4 Kan. 558; State Journal Co. v. Commonwealth Co., 43 Kan. 93, 22 Pac. 982; Sherman v. Randolph, 13 Okl. 224, 74 Pac. 102; Maas v. Dunmyer, 21 Okl. 434, 96 Pac. 591; Brewer v. Martin, 40 Okl. 350, 138 Pac. 166.) See also 24 Cyc. 116, 117.

4. This brings us to a consideration of the merits of the cause, and the contention that the judgment is not responsive to the pleadings or issues, but outside of and beyond any issue in the cause. That is the only objection urged against the judgment, except as to the proceedings prior to the trial, under assignments of error that the decision and judgment are contrary to and unauthorized by law and not sustained by sufficient evidence; and it is argued in substance and effect by counsel for plaintiffs in error (defendants below) that the only issues in the cause, aside from that arising under the averments and prayer for the appointment of a receiver, were the right of the plaintiff to a decree foreclosing the deed, or deed and contract, as a mortgage and a money judgment on the notes or a deficiency judgment; and that it appearing from the evidence that the transaction was not a mortgage, but that the absolute title to

the lands was conveyed to the plaintiff by the deed, and intended to be so conveyed, the court was without authority to enter a judgment foreclosing the right of the defendants under the contract of sale, quieting the plaintiff's title or awarding him possession. The material allegations of the second amended petition with reference to the deed, contract and notes have been stated above, but it is now necessary to refer to some of the provisions of the contract as set out in full in each petition, and to the prayer for relief.

The contract appears to have been entered into on September 20, 1913, and the notes, that is to say, the principal note and the interest coupon notes, bear the same date. By the terms of that contract the plaintiff agreed to sell to defendants certain lands therein described (the same lands described in a preceding paragraph of the petition as conveyed to the plaintiff by the defendants by a warranty deed dated October 20, 1913) and the defendants agreed to pay to the plaintiff within three years from the date of the agreement the sum of $19,390, as follows: "the entire amount named herein on or before three (3) years from the date hereof, evidenced by one principal note with three (3) coupon interest notes attached, with interest at the rate of ten (10) per cent per annum from date hereof, to be paid annually in each year, on the whole sum from time to time remaining unpaid"; also to pay all ordinary taxes assessed for revenue purposes upon the premises, or any part thereof, subsequent to the year 1912, "and also all other assessments which now are, or may be hereafter, charged or assessed upon or against the premises, or any part thereof." It is further provided by the contract that in case of a failure to pay said taxes or assessments, and the plaintiff shall pay the same, the amount of such payments made by him, with interest from the date of payment, shall become an additional consideration and the payment thereof shall be made by the defendants for "the premises herein agreed to be conveyed." The execution and delivery of a deed by the plaintiff to the defendants is provided for upon the pay-

ment of the principal and interest aforesaid and the faithful performance by the defendants of the undertaking to be performed by them. The contract also provides that in case of default in the payments of principal and interest, and for thirty days after the same shall become due, the agreement shall be null and void and no longer binding, at the option of the plaintiff, his representatives or assigns, and all the payments which shall then have been made absolutely and forever forfeited to the plaintiff; or at the election of the plaintiff, his representatives or assigns, the covenants and liability of the defendants shall continue and remain obligatory upon them, and may be enforced, and the said consideration money, and every part thereof, with the annual interest as specified, be collected by proper proceedings in law or equity. And it is further provided by the contract that in case of such default, and the election to consider the said contract of sale at an end and prior payments forfeited, the defendants, their heirs, representatives or assigns, who may have possession or the right of possession of said premises at the time of such default, or at any time thereafter, shall be considered and are agreed and declared to be, in law and in equity, the tenant or tenants at will of the plaintiff, his representatives and assigns, on a rent equal to an interest of ten per cent per annum on the whole sum of the purchase-money, payable quarter-yearly in advance from the date of such default; and that after such default and election to consider the contract as void, the plaintiff, his representatives and assigns, shall and may have and exercise all the powers, rights, and remedies provided by law or equity to collect such rent, or to remove such tenant or tenants, the same as if the relation of landlord and tenant were created by an original absolute lease for that purpose on a special rent payable quarterly on a tenure at will. There is also a provision that in case of such default and election such tenant or tenants shall pay all taxes upon the premises during the continuance of the tenancy.

By the terms of the principal note it is provided that in default of the payment of any coupon interest note, or any part thereof, for the space of thirty days after the same becomes due and payable, then said note, and all of said coupon interest notes for the interest due at the time of such default, shall become due and payable at the option of the legal holder of said principal note. And the petition alleges that the plaintiff is the owner and holder of said principal and coupon notes; that the first coupon note became due and payable on September 20, 1914, and that more than thirty days having elapsed since said date, and the defendants having failed, refused and neglected to pay the same, or any part thereof, the plaintiff had elected under the terms of the principal note to declare the entire indebtedness due and payable; and that there was then due on account thereof the principal sum aforesaid, the interest according to the first coupon note, and the further sum of ten per cent interest thereon from September 20, 1914, amounting in the aggregate to $22,689.65. And it is also alleged that the plaintiff had paid the taxes on the premises for the year 1914 amounting to $202.18, the defendants having failed and neglected to pay the same, and that amount is alleged to be due to the plaintiff, together with interest at the rate of ten per cent per annum from April 13, 1915.

It is prayed by said second amended petition in substance as follows: 1. That the plaintiff have and recover judgment for the principal sum stated with interest thereon as alleged in the petition. 2. That the plaintiff have judgment for the amount of the taxes paid as aforesaid with interest. 3. That the deed and contract be adjudged and decreed to be a mortgage, and that a decree be entered foreclosing the right and interest of the defendants in the premises including their equity of redemption. 4. That the decree may order the sale of said mortgaged premises according to law and the practice of the court, and the proceeds applied to the payment of the amount due to the plaintiff. 5. That the defendants and all persons claiming under them subse-

quent to the execution of the deed and contract may be barred and foreclosed of all right, claim or equity of redemption in the said premises, or any part thereof, and that the plaintiff have judgment for any deficiency remaining after applying the proceeds of sale properly so applicable to the satisfaction of the judgment.  6.  That the court appoint a receiver of the premises, who may be authorized to cultivate the land, and do all things necessary to preserve the same from waste and destruction, or to lease the premises to any competent person for such purpose, as in the judgment of said receiver will most effectually preserve the interest of the parties, and, subject to the further order of the court, preserve the rents and profits of said land.  7. That the plaintiff have judgment for his costs.  8. And such further and additional relief as in justice, equity and good conscience the plaintiff is entitled to.

Upon the trial the only witness examined or produced by either party was the plaintiff, who was sworn as a witness in his own behalf.  He identified the note and the attached coupon interest notes and the signatures of the defendants thereto and the same were received in evidence without objection.  He also testified that no part of the indebtedness had been paid; that the first coupon note for $1,939, due September 20, 1914, was not paid; and he identified the signature of the treasurer of Park County to certain tax receipts, which were introduced in evidence, showing the payment of the taxes on the property in question for the year 1914 by the plaintiff, amounting in the aggregate to $202.16.  He was then asked what the defendants did, if anything, to secure the payment of the indebtedness at the time he received the note and coupon notes.  He answered that he had a deed to the land executed by John M. Baldwin and his wife, Virena Baldwin.  In response to succeeding questions he stated that there was a contract between him and the defendant relating to the same land, "by which he was given three years to redeem by paying the interest and taxes annually for three years"; that there

were 880 acres in the tract; that some of the land was worth probably $25 an acre, and some of it about $10 an acre, but that the fair and reasonable value of the entire tract was not more than $20 an acre. He was examined further with reference to the financial condition of the defendants, but that testimony is not material here. That was the extent of his evidence on direct examination. The cross-examination is quite material for the purpose of explaining the judgment that was entered, and as it is short we quote the same, together with an admission by counsel for the defendants during the course of such examination.

Q. Mr. McDonald, in your direct examination, you testified you had a deed to this land, did you not? A. I have. Q. Isn't it a fact, Mr. McDonald, that just prior to the instituting of this suit that you served notice on the defendant to vacate the premises? (Plaintiff objects to the question as irrevelant and immaterial. Objection overruled. Plaintiff excepts.) A. I did. Q. Why did you serve that notice? A. Because I thought that under the conditions of that deed, the land was mine without any further ceremony. Q. Then at the time this deed was made, it was your intention that the deed should be an absolute transfer of the title to that property? (Plaintiff objects to the question as asking for the legal conclusion of the witness. Objection sustained. Defendants except.)

Mr. Rich: If your Honor please, I will make this admission. I will make the admission that the absolute title to the property is in the plaintiff, Mr. McDonald, and that at the time the deed was made, it was made and intended by the parties at the time, that the title should pass to the plaintiff in this case and that they entered into a contract of a conditional sale between the parties. I am willing to make that admission in the record, and I would like to ask another question or two to show your Honor that this is true.

Q. Mr. McDonald, is that not true, that admission that I make? (Plaintiff objects to the question. Objection over-

ruled.  Plaintiff excepts.)  A.  I don't know as I considered that a sale.  It was simply a contract for redemption.  Q. It was agreed between the parties it was a contract for him to purchase the land?  A.  The agreement, yes, sir.  Q.  You had absolute title to the land?  A.  Yes, I had the absolute title.  That's the way I understand the contract.  (End of the testimony.)

The trial appears to have stopped there, without any further offer of evidence by either of the parties.  And thereupon the court rendered the following judgment, from which, in quoting it, we omit the description of the land:

"Now, to-wit, on this 18th day of June, 1915, this matter coming on to be heard, upon the pleadings and files in said action and upon the evidence introduced upon the part of the plaintiff, the plaintiff appearing by himself and his attorneys, Messrs. E. E. Lonabaugh and W. L. Walls, and the defendants appearing by their attorneys, Messrs Brome and Rich, and the court having heard the evidence offered and introduced upon the part of the parties, and the defendants and each of them having stipulated into the record that the legal title to the real estate in question is now in the plaintiff, and it appearing to the court that the defendants have wholly failed to comply with their part of the agreement and having failed to pay any part of the indebtedness or the taxes levied against said real estate, and that by reason thereof they have forfeited all right, title and interest in and to the hereinafter described real estate.

"It is ordered, adjudged and decreed that the title in and to the following described real estate, to-wit, (the lands being here described), together with all water, water rights, and water ditches, as well as the rights to the use of the said ditches for irrigation and domestic purposes, used in connection with the above described lands and appurtenant thereto, and all improvements of whatever kind or nature thereon situated, be and the same is forever quieted in the plaintiff, and the defendants are forever barred and fore-

closed from any right, title or interest in and to the above described real estate, and

"It is further ordered, that the plaintiff have immediate possession of the above described premises and that a writ of possession issue to him therefor, and that he recover his costs herein, taxed at $73.35. To all of which the defendants at the time by their counsel duly excepted."

Counsel for plaintiff in error seem to understand this judgment as one merely quieting the title of the plaintiff and granting him possession of the premises, and contend that it goes outside of the issues. Opposing counsel refer to it as a decree cancelling the contract of sale and quieting plaintiff's title, and contend that the petition should be considered as amended so as to sustain such judgment, and that the court having acquired jurisdiction to grant the equitable relief could properly grant all other necessary relief such as awarding possession to the party entitled thereto. The plaintiff would not be entitled to a judgment quieting his title as in the statutory action provided for by Section 4964, Compiled Statutes, 1910, for the plaintiff in such an action must allege and show that he is in possession either by himself or tenant, and here the plaintiff was not in possession. It is suggested in the brief of defendant in error (plaintiff below) that he was in possession by tenant under that provision of the contract declaring that upon his election to consider the contract at an end after a default in payment the defendants shall be considered tenants at will. That might be sufficient possession as against a third party out of possession claiming adversely to the plaintiff, but we cannot construe the statute as permitting one to maintain the action against his alleged tenant who is in possession and claiming an estate or interest adverse to him. By statute in some states an action to quiet title may be maintained by one out of possession. (See Mitchell v. Black Eagle Min. Co., 26 S. Dak. 260, 128 N. W. 159; Ann. Cas. 1913B, 85.) And the statute has been amended in Ohio so as to permit it in some cases. (Raymond v. Railway Co., 57 O. St. 271, 48

N. E. 1093.)   It may be doubtful also if a mere judgment for possession as in ejectment would be proper under the pleadings and proof in this case.

But the judgment does not contain a provision cancelling the contract and we doubt if that would be an appropriate remedy.   Nor do we understand the judgment as intended to rest upon the authority of the provisions of Section 4964, or as granting possession under Section 4966, Compiled Statutes, which authorizes the recovery of real property by one who states in his petition that he has a legal estate therein, and is entitled to the possession thereof, and that the defendant unlawfully keeps him out of possession; the code or statutory action intended as a substitute for the common law action of ejectment.   On the contrary, we think the judgment is to be considered as based upon equitable principles foreclosing the right, interest and equity of the defendants in and to the lands in question under the contract aforesaid, and awarding possession as an ancillary equitable remedy to enforce the decree of foreclosure; a remedy often used and held proper in ordinary foreclosure proceedings, and even to put the purchaser in possession where the property has been sold under the decree, though some of the cases hold that the writ, usually called a writ of assistance, but in our statutes writ of possession, should not be granted in the original decree but upon a subsequent application in the cause and a showing of the existence of the conditions subsequent to the decree entitling the party or applicant to such writ.   (2 Jones on Mortgages, 6th Ed., Secs. 1562, 1663-1666, & cases cited; 2 Wiltsie on Mort. Foreclosure, 3rd Ed., Secs. 681, 723-731; 3 Pomeroy's Eq. Jur., 3rd. Ed., Sec. 1228; Bird v. Belz, 33 Kan. 391, 6 Pac. 627; Watkins v. Jerman, 36 Kan. 464, 13 Pac. 798; Goit v. Dickerman, 20 Wis. 661; Landon v. Burke, 36 Wis. 378; 27 Cyc. 1647.)   And if not objectionable on other grounds the judgment might be modified by excluding the part quieting plaintiff's title, if that specific relief should be deemed improper.

The rule in equity defining the relation of the vendor and vendee respectively to the land, under a contract of sale prior to the conveyance of the legal title, is stated and discussed in the opinion in Olds. v. Little Horse Creek Cattle Co., 22 Wyo. 336, 140 Pac. 1004. That rule is that in equity the vendee is treated as the beneficial owner of the land and the vendor as the owner of the purchase-money, and the vendor becomes, as to the land, a trustee for the vendee, subject to the performance of the latter's obligations, and the vendee, as to the purchase-money, a trustee for the vendor, who has a charge or lien on the land or equitable estate of the vendee therefor; though it is said in Pomeroy's Equity Jurisprudence (3rd Ed.) to be a misnomer to call the vendor's title a lien, since he has no need of a lien, his legal title being a more efficient security. (Section 1260.) "The so-called lien * * * * * simply means his right to enforce his claim for the purchase money against or out of the vendee's equitable estate by means of a suit in equity." (Id. Sec. 1261.) But in common practice the vendor's right or security under such a contract is termed a lien or a vendor's lien, though not to be confounded with the implied lien of a vendor who has conveyed the legal title: (2 Warvelle on Vendors (2nd Ed.) Sec. 713.) And by virtue of this so-called lien the right and equitable interest of the vendee may be declared forfeited and foreclosed by a suit in equity. (2 Warvelle on Vendors (2nd Ed.) Secs. 712, 714; 2 Jones on Mortgages (6th Ed.) Sec. 1541; 3 Pomeroy's Eq. Jur. (3rd Ed.) Sec. 1262; 2 Tiffany's Mod. Law of Real Prop., Sec. 566; Field v. Ashley, 79 Mich. 231, 44 N. W. 602; Foster v. Ley, 32 Neb. 404, 49 N. W. 450, 15 L. R. A. 737; Harrington v. Birdsall, 38 Neb. 176, 56 N. W. 961; Landon v. Burke, 36 Wis. 378; Hardin v. Boyd, 113 U. S. 756, 5 Sup. Ct. 771, 28 L. Ed. 1417; Patterson v. Mikkelson, 86 Neb. 512, 125 N. W. 1104; 39 Cyc. 1794, 1847.) It is said in Pomeroy's Equity Jurisprudence, in the section cited: "The equity action to enforce the so-called lien is simply an action to compel the vendee to make pay-

ment of the purchase price within a specified time, or else be barred of all rights under the contract,—that is, an action to foreclose the contract." Mr. Tiffany says, in the section of his work above cited: "The equitable interest or estate which the purchaser has in such case is, however, subject to the right of the vendor to payment of the purchase price, and this right the vendor may, if necessary, enforce by a proceeding in equity somewhat analogous to the foreclosure of a mortgage, by which the vendee loses all his contract rights in the land." And it is generally held, in the absence of a statute to the contrary, that the decree in such case may be for a strict foreclosure. (2 Jones on Mort. (6th Ed.) Sec. 1541, and cases cited; 39 Cyc. 1874-1875.) And it is held also that as the land contract is not a mortgage, the action to foreclose such contract is not controlled by a statutory provision like that in this state (Comp. Stat. 1910, Sec. 4612) requiring that when a mortgage is foreclosed a sale of the premises shall be ordered. (Foster v. Ley, supra; Gallagher v. Giddings, 33 Neb. 202, 49 N. W. 1126; Harrington v. Birdsall, supra; Patterson v. Mikkelson, supra.) It is stated in Section 1541 of Jones on Mortgages, above cited, that in such case a decree of sale would be improper, because the title to the premises remains in the vendor. But in Harrington v. Birdsall, supra, the Supreme Court of Nebraska say with reference to the decree in such case:

"The remedy by strict foreclosure of land contracts cannot be resorted to in all cases. The remedy being a harsh one, courts of equity will decree a strict foreclosure only under peculiar and special circumstances. Applications of that character are addressed to the sound legal discretion of the court, and they will be granted in cases where it would be inequitable to refuse them. If the vendee or purchaser has not been guilty of gross laches, nor unreasonably negligent in performing the contract, a strict foreclosure should be refused on the ground that it would be unjust, even though the vendee may have been slightly in default

in making of a payment. So, for the same reason, a strict foreclosure will be denied where the premises have greatly increased in value since the sale, or where the amount of unpaid purchase money is much less than the value of the property. On the other hand, if the vendee, without sufficient excuse, fails to make his payments according to the stipulations of his contract, and for an unreasonable time remains in default, the vendor may have a strict foreclosure of the contract for the sale and purchase of the land, unless some principle of equity would be thereby violated." In Hardin v. Boyd, supra, the land was ordered to be sold in satisfaction of the lien. And though a judicial sale is not necessary to transfer title we think it would not be improper to order a sale as on the foreclosure of a mortgage if the court should deem that the more equitable manner of granting the relief, under the circumstances of the case. The section in the Ohio code corresponding to our Section 4612 has been amended so as to require a sale whenever any specific lien is enforced.

While this judgment appears to have been framed upon the theory of a strict foreclosure of the contract, it materially departs from the usual form of a strict foreclosure decree, in that it fails to allow the defendants any time in which to pay the amount due. The form of such a decree as shown in all the books, so far as we have been able to ascertain, and certainly as generally employed, is to require the defaulting party to pay the amount due within a reasonable time to be fixed by the court in the excercise of its sound discretion, or to be forever barred of his right to redeem. (39 Cyc. 1875; 2 Jones on Mort. (6th Ed.) Secs. 1539, 1541; 2 Wiltsie on Mort. Foreclosure (3rd Ed.) Secs. 976, 977; 3 Pomeroy's Eq. Jur. (3rd Ed.) Secs. 1227, 1262; Warner Bros. Co. v. Freud, 138 Cal. 651, 72 Pac. 345.) The remedy of a strict foreclosure of mortgages was based upon the original conception of a mortgage, that it was a conditional sale of the land rather than a mere security; and hence it was said to be consistent with that doctrine that the

court, having relieved the mortgagor from the forfeiture of his condition, should require him to perform it within a reasonable time, or be forever barred of his right to redeem. (2 Jones on Mort. Sec. 1539.) And the same author says as to the form of the decree of a strict foreclosure of a land contract that, "it should be that the money due on the contract be paid within such reasonable time as the court shall direct, and that in case of failure to make payment, the vendee be foreclosed of his equity of redemption." In Section 1262 of Pomeroy's Equity Jurisprudence, in a sentence previously quoted, it is said that the action in equity to enforce the lien of the vendor under the contract is an action "to compel the vendee to make payment of the purchase price within a specified time, or else be barred of all his rights under the contract." And in discussing strict foreclosure of a mortgage that author says in Section 1227, above cited: "The decree ascertains and fixes the amount of the debt due and payable after an accounting, if necessary; prescribes a period—say six months—within which redemption must be made by payment of this sum; and declares that on default of payment within a specified period, the legal estate and title of the plaintiff shall be absolute," &c. And in one of the sections cited (977) from Wiltsie on Foreclosure, it is said that the time usually allowed for redemption is six months. In Warner Bros. Co. v. Freud, supra, the Supreme Court of California say: "So strict foreclosure is often resorted to in cases of land contracts where the vendor has retained the title and the vendee has failed to perform his contract. In such case the court finds the amount unpaid, and decrees that it be paid on or before a day stated, and upon failure to make the payment that defendant's equity be foreclosed."

Following the theory of a strict foreclosure, therefore, we think it proper that the defendant should be allowed by such a decree a reasonable time in which to pay the amount due, and that this judgment ought not to be affirmed unless it can be modified in that respect. The judgment might be so

modified if there was a finding upon which to base the modi-
fication, but there is no finding of the amount due, and this
court cannot supply that omission. For that reason, though
the judgment might be held otherwise proper as supported
by the pleadings and the evidence, the judgment must be
reversed and the cause remanded for a new trial.

We think it proper to say, however, that a judgment
based on proper findings and correct as to form foreclosing
the interest and equity of the defendants under the contract
would have been supported by the evidence, assuming that
the admission of counsel for defendants on the trial brought
into the evidence the deed and contract alleged in the peti-
tion; and we are inclined to the opinion that it might have
that effect. Those papers were not otherwise produced in
evidence. But the said admission was clearly intended by
counsel making it, and understood by opposing counsel and
the court, to refer to the deed and contract mentioned in the
petition. It was a judicial admission of a fact, for, taken in
connection with the subsequent cross-examination of the
witness McDonald, which was for the expressed purpose of
corroborating the truth of the admission, it was declared
that at the time the deed was made it was intended by the
parties to convey the absolute title to the plaintiff, and that
the contract was merely one of sale, or as stated by counsel
in the admission "a conditional sale." Such an admission
has the effect, as said by Professor Wigmore, in his work on
evidence, "of a confessory pleading, in that the fact is there-
after to be taken for granted; so that the one party need
offer no evidence to prove it, and the other is not allowed to
disprove it." And he adds: "This is what is commonly
termed a solemn—i. e., ceremonial or formal—or judicial
admission, and is, in truth, a substitute for evidence, in that
it does away with the need for evidence." (Wigmore on
Ev., Vol. 4, Sec. 2588.) In Chamberlayne's Modern Law
of Evidence, at Section 1239, it is said: "Should a legal
representative announce in open court that he agrees, for
the purposes of the case, that a certain fact exists, the only

question open is as to the speaker's authority to make the admission. If authorized, the statement is a complete *levamen probationis*. That was precisely the object with which it was made, to substitute the statement for evidence of the fact covered by it." (See also 16 Cyc. 964; 1 Greenleaf on Ev. (Redfield's Ed.) Secs. 186, 205; Pratt v. Conway, 48 Mo. 291, 29 S. W. 1028, 71 Am. St. Rep. 602.)

Such a judgment would also be sustained by the petition on which the cause was tried, although relief was prayed on the theory that the transaction was a mortgage, and it was alleged that the deed and contract were executed to secure the payment of the indebtedness, for an amendment might have been allowed by adding in the appropriate paragraph a prayer in the alternative for the foreclosure of the contract and the interest and equity of defendants thereunder, if it should be found that the transaction was not a mortgage, and that the absolute title was vested in the plaintiff subject only to the right of the defendants under the contract. The identity of the transaction would be the same and the object of the suit would not be materially changed, such object being to foreclose whatever right the defendants may have in and to the premises. It would be the duty of the court to find upon the facts the nature of the transaction and decree the appropriate relief; and any relief consistent with the facts alleged, if sustained by the evidence, would be proper. (Coffinburg v. The Sun Oil Co., 68 O. St. 488, 67 N. E. 1069; Tiffin Glass Co. v. Stoehr, 54 O. St. 157, 43 N. E. 279; Culver v. Rodgers, 33 O. St. 537; Riddle v. Roll, 24 O. St. 572; Johnston v. Myers, 138 Iowa 497, 116 N. W. 600; Bradburn v. Roberts, 148 N. C. 214, 61 S. E. 617; Missouri K. & T. Ry. Co. v. Murphy, 75 Kan. 707, 90 Pac. 290; Hiatt v. Parker, 29 Kan. 765; Hardin v. Boyd, 113 U. S. 756, 5 Sup. Ct. 771, 28 L. Ed. 1141; Joseph v. Decatur Land, I. & F. Co., 102 Ala. 346, 41 South. 739; Romanoff Min. Co. v. Cameron, 137 Ala. 214, 33 South. 864.) Under the admission aforesaid as to the intention of the parties and the effect of the deed and contract, if accepted by the oppos-

ing party and the court, the plaintiff would not be entitled to a personal or deficiency judgment, and the defendants might not be entitled to have a judicial sale of the property; but the fact that a plaintiff prays for more than he is entitled to does not forbid the granting of the relief he is shown to be entitled to consistent with the facts alleged.

The petition aforesaid alleges the facts of the execution and delivery of the deed, notes and contract, the failure to pay as provided in and by the notes and contract, that the whole sum has become due and payable, and that the defendants are in possession of the premises. The plaintiff may have been mistaken in his theory of the legal effect of the transaction, but that ought not to prevent his obtaining the relief which the facts entitle him to. No good reason is perceived for requiring the plaintiff, under such circumstances, to bring another action where the same question would again be litigated. If there was an antecedent indebtedness, or the creation of a debt at the time independent of the promise in the contract to pay the purchase price, the transaction would probably be a mortgage. But a deed and contract to reconvey may be executed under such circumstances that they will not constitute a mortgage. As said in Pomeroy's Equity Jurisprudence (3rd Ed., Sec. 1194) they "may be what on their face they purport to be,—a mere sale with a contract for repurchase,—or they may constitute a mortgage." "Whether any particular transaction does thus amount to a mortgage or to a sale with a contract of repurchase must, to a large extent, depend upon its own special circumstances; for the question finally turns, in all cases, upon the real intention of the parties as shown upon the face of the writings, or as disclosed by extrinsic evidence." (Id., Sec. 1195.) (See also Bigler v. Jack, 114 Ia. 667, 87 N. W. 700.)

In the case of Hardin v. Boyd, *supra,* where one had executed a title bond, reciting the sale to the purchaser of certain lands for a specified sum to be paid in a particular manner, and providing for a conveyance to the purchaser

upon payment of the purchase price, and after the death of the vendor an administrator of his estate appointed in the state where the lands were situated executed an absolute conveyance to the purchaser of said vendor's right, title and interest in the lands, an action was subsequently brought by the heirs of the vendor and his administrator appointed in another state setting forth certain facts, and praying that the bond for title and the former administrator's deed, as well as a deed executed by the purchaser to his wife be set aside for fraud. The bill also prayed that an account be taken of the rents and profits and the value of certain securities delivered by the purchaser to the administrator who executed the deed; said securities being alleged to have been worth much less than the face value for which they were taken; and that the complainants have a personal decree against the defendants for any balance due them, and that their title to the lands be quieted in them, and for such other relief as equity may require. During the trial the prayer was amended by leave of the court by adding: "Or, if thought proper, that the court give a decree for the purchase-money due upon said lands, and that the plaintiffs be decreed to have a lien on said lands for the payment thereof, and that said lien be foreclosed." The defendants excepted to the allowance of the amendment. It was held in the opinion delivered by Mr. Justice Harlan, that, aside from the allegations with reference to fraud in obtaining the title bond, the bill made a case of non-payment of the greater part of the purchase-money; and that the amendment to justify a decree consistent with that fact did not make a new case, nor materially change the substance of the one actually presented by the bill and the proofs. And, in said opinion, the court said: "It served only to enable the court to adapt its measure of relief to a case distinctly alleged and satisfactorily proved. * * * * Under the liberal rules of chancery practice which now obtain, there is no sound reason why the original bill in this case might not have been framed with a prayer for the cancellation of the contract

upon the ground of fraud, and an accounting between the parties, and, in the alternative, for a decree which, without disturbing the contract, would give a lien on the lands for unpaid purchase-money. The matters in question arose out of one transaction, and were so directly connected with each other, that they could well have been incorporated in one suit involving the determination of the rights of the parties with respect to the lands. The amendment had no other effect than to make the bill read just as it might have been originally prepared consistently with the established rules of equity practice. It suggested no change or modification of its allegations, and, in no just sense, made a new case."

In Hiatt v. Parker, 29 Kan. 765, the plaintiff alleged that he had conveyed certain lands to the defendant, upon the consideration that the defendant should keep and take care of him during his life, and that as part of the same transaction, the defendant executed to the plaintiff an instrument in writing denominated therein a mortgage and purporting to reconvey the premises to the plaintiff as security for the performance of the contract to keep and care for him. The petition further alleged that the defendant had failed and refused to perform his part of the contract and prayed for a decree rescinding the contract and declaring it void, and that the title conveyed by deed be reinvested in the plaintiff; or, if the instrument shall be considered a mortgage, that an account be taken of what plaintiff ought to have received, and the same adjudged a first lien on the premises, and that foreclosure be decreed. The court held the transaction to be a mortgage; that an alternative prayer is proper where the plaintiff has doubts as to how much or what kind of relief he is entitled to and that the petition stated sufficient facts to constitute a cause of action for foreclosure, though the prayer was held defective for not stating the amount of the judgment demanded.

In Romanoff Min. Co. v. Cameron, supra, the Alabama court said: "It may be conceded that the mortgage sought to be foreclosed by the bill was invalid and yet, the decree

of the chancellor declaring a vendor's lien in favor of the complainant under the general prayer 'for relief, upon the facts averred, was entirely correct, unless the defenses set up in the answer and cross-bill can be held to bar a recovery." And the same court in Joseph v. Decatur Land &c. Co., supra, said: "And if it be conceded that the decree was technically irregular, or even erroneous, in that it in terms foreclosed the mortgage, against which the plea of coverture was good, instead of declaring and effectuating complainant's vendor's lien, as might have been done under the prayer for general relief, the irregularity or error is wholly without injury to the appellant—since the relief actually granted is precisely that to which complainant was entitled upon a declaration and enforcement of the lien for purchase-money—and would not justify a reversal."

For the reason above stated as to the form of the judgment and the insufficiency of the findings to permit of a modification thereof the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

BEARD, J., concurs.

SCOTT, J., being ill, did not participate in the decision.