[No. 38395.   Department Two.   September 1, 1966.]

HERMAN KATHMAN *et al., Plaintiffs,* v. CLAIR M. WAKELING *et al., Appellants,* WILFRED CHAUSSEE *et al., Respondents.**

*MacDonald, Hoague & Bayless, Alec Bayless,* and *Raymond E. Brown,* for appellants.

*Torbenson, Thatcher, Stevenson & Burns,* by *Robert Stevenson,* for respondents.

KALIN, J.†—Herman Kathman and Clair Wakeling were partners in a trailer park in Woodinville. They formed a corporation to further develop the trailer park, each partner owning 50 per cent of the stock. Wakeling then offered to purchase Kathman's interest in the corporation and, on March 26, 1962, an agreement was reached. By the terms of this agreement, Wakeling was to purchase Kathman's share for $55,840, evidenced by two promissory notes. These

*Reported in 417 P.2d 840.

†Judge Kalin is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

parties agreed to assist each other in obtaining a $100,000 loan from the Bank of America.

The loan was obtained but Wakeling felt more funds were needed. On April 30, 1962, Wakeling sold his right to buy Kathman's stock to the Wil Chaussee Siding Company for a down payment of $4,500 and the assumption of Wakeling's liabilities under the March 26th contract. Wakeling and the Siding Company entered into another agreement on October 15, 1962, whereby Wakeling sold his share of the corporation to the Siding Company for $66,000. The down payment of $3,500 was made and the balance was to be made in installments. This balance was represented by a promissory note. Chaussee personally guaranteed the performance of the Siding Company. Both the Kathman and Wakeling agreements, stock and promissory notes were placed in escrow with the Bank of America.

The Kathman-Wakeling agreement and the Wakeling-Chaussee Siding Company agreement contain the following similar language with respect to the remedies of the seller in the event of default.

| KATHMAN-WAKELING | CHAUSSEE-WAKELING |
|---|---|
| 1. There is no provision for a suit for the balance of the purchase price; | 1. There is no provision for a suit for the balance of the purchase price; |
| 2. Paragraph 4, page 3 . . . "In the event that Wakeling fails to cure the default within the sixty day period, *Kathman shall have the option of either:* | 2. Paragraph 3, page 4 . . . "In the event Chaussee fails to cure such default within said sixty day period, Wakeling *shall have all of the following options:* |
|   a. Assuming the exclusive management of the business . . . and procuring a sale of the stock . . . the manner, method and/or terms . . . to be under the sole and exclusive control and direction of Kathman; or |   a. Assuming e x c l u s i v e management of the business . . . and procuring a sale of the stock . . . the manner, method and/or terms . . . to be under the sole and exclusive control and direction of Wakeling; *or* |

b. Voluntarily dissolving the corporation and causing a receiver to be appointed to manage the affairs of the corporation . . ."

3. Paragraph 4 (b) (2), page 4 . . . "In the event of the *election of Kathman of either alternatives* . . . Wakeling agrees to irrevocably vote his stock in such a manner as to effectuate the provisions of this paragraph 4 . . ."

4. Paragraph 4 (B) (3), page 4 . . . "In the event of default by Wakeling and *exercise by Kathman of one of the remedies herein provided for,* Wakeling . . . agrees . . . to sell his interest . . . for an amount . . ."

5. Paragraph 9, page 6 . . . "W a k e l i n g promises and *agrees that in the event of a forfeiture as herein provided* he will . . ."

6. Paragraph 15, page 7 . . . "The parties agree that this agreement *contains all of their agreements in their entirety* relating to the purchase by Wakeling of Kathman's stock . . ."

b. Voluntarily dissolving the corporation and causing a receiver to be appointed to manage the affairs of the corporation . . ."

3. Paragraph 3 (B) (2), page 5 . . . "In the event of the *election by Wakeling of either alternatives* set forth at paragraph 3 (A) or (B) above, Chaussee irrevocably agrees to vote his stock in such a manner as to effectuate the provisions of this paragraph 3 . . ."

4. Paragraph 3 (B) (3), page 5 . . . "In the event of a default by Chaussee and an *exercise by Wakeling of one of the remedies herein provided,* Chaussee agrees . . . to sell his interest . . . for an amount . . ."

5. Paragraph 6, page 6 . . . "C h a u s s e e promises and agrees *that in the event of a forfeiture of his interests as herein provided . . ."*

6. Paragraph 13, page 7 . . . "The parties hereto agree that this agreement *contains all of their agreements in their entirety* relating to the purchase by Chaussee of Wakeling's stock . . ."

Wakeling sued the Siding Company and Chaussee indi-

vidually, alleging breach of the October 15th contract and seeking money damages. Defendants' answer alleged that the agreement set out exclusive remedies and they were not liable for money damages. While their suit was pending, Kathman sued Wakeling to obtain all the corporate stock. By this time, the Siding Company had tendered all its right and interest to the stock to Kathman, who accepted the tender. The Siding Company and Chaussee then moved to intervene in the Kathman-Wakeling suit, which motion was granted. Their complaint in intervention asked that the tender to Kathman be confirmed, that their obligations to Kathman and Wakeling be discharged, and that the remedies provided in paragraph 3 of the October 15th agreement be declared exclusive.

Kathman then moved for summary judgment against Wakeling and the Siding Company for delivery of the corporate stock as provided in the agreements of March 26th and October 15th. This was granted by the trial court and no appeal was taken from this order. The Siding Company moved for summary judgment against Wakeling to limit him to the remedies provided in paragraph 3 of the October 15th agreement. This, too, was granted by the trial court and is the subject of this appeal.

Appellant Wakeling makes two assignments of error. First that the trial court should not have allowed the Siding Company and Chaussee, respondents, to intervene and litigate issues totally unrelated to the subject matter of appellant's action against respondents. This argument is without merit. Respondents found themselves in a position where they had to intervene to prevent double liability on their part. If appellant lost the suit instituted by Kathman, he could not then make delivery of the stock. Yet appellant's suit against the respondents necessitated appellant being able to deliver this same stock to respondents. We feel the trial court used excellent judgment in allowing all issues to be litigated in one lawsuit, for both lawsuits involved the same subject matter, similar contracts and affected the same parties. It must also be noted that appellant made no ob-

jection to respondents' intervention until the motion for summary judgment was made.

Appellant's second assignment of error is that the agreement of October 15th does not clearly and unambiguously provide for specific remedies to the exclusion of all other remedies. We do not quarrel with appellant's statement of the law generally governing these matters. It is true that, reading the contract as a whole, the intent of the parties will govern construction; *Dixon v. Gustav,* 51 Wn.2d 378, 318 P.2d 965 (1957); and that a remedy specified in a contract is to be considered permissive rather than exclusive, unless so provided in the contract either expressly or by necessary implication. *Jensen v. Sire,* 137 Mont. 391, 352 P.2d 263 (1960); *Inland Prod. Corp. v. Donovan, Inc.,* 240 Minn. 365, 62 N.W.2d 211 (1953). However, we cannot agree with appellant's conclusion that his remedies are not expressly limited by paragraph 3 of the October 15th contract. This contract must be read in light of the surrounding circumstances. Appellant, because of his agreement with Kathman, was in a position where he had to have access to the stock of the corporation. Thus, in his sale agreement to the Siding Company, it was necessary to have an identical provision to that of the Kathman-Wakeling contract. Bearing this in mind we must assume that, had the parties wished to give appellant other remedies against the Siding Company, they would have so specified in the contract. The October 15th agreement was drawn with the obvious intent that it be a complete statement of the parties' rights. We must also bear in mind the fact that the primary concern of all these contracts was that Kathman was to have control of the corporate stock in case of default, and the October 15th agreement was drawn so that appellant would be in a position to comply with a demand by Kathman.

Appellant further argues that there is sufficient ambiguity in the contract of October 15th to get him past summary judgment. We find no such ambiguity. Paragraph 3 of the October 15th contract states that, upon the occurrence of an event amounting to default, appellant "shall have the

following options." Appellant insists we construe options as meaning an offer that the optionee may accept or reject. A reading of the entire agreement forces us to conclude that the word option is being used to denote a choice between remedies, rather than an offer of extra remedies. This was an agreement to transfer control of a corporation. The seller's security lies in his ability to regain control of the corporation in event the buyer defaults. It would strain belief to conclude that in such a carefully drawn instrument the parties intended some other remedies that were unsecured.

Appellant also argues that by accepting respondent's construction we render the note and guaranty meaningless. He ignores the fact that the note was to be held by the escrow agent, not himself. If the note was to be anything more than evidence of a debt, it would have been in the hands of the seller, appellant here. The note and agreement were made at the same time at appellant's insistence and complemented one another. The note and agreement are to be construed together and the meaning gathered from the entire context, rather than from the note itself. *Toellner v. McGinnis*, 55 Wash. 430, 104 Pac. 641 (1909); *Washington Trust Co. v. Keyes*, 79 Wash. 61, 139 Pac. 638 (1914). Equally, the guaranty of performance is not repugnant to the trial court's construction. Wil Chaussee was the primary stockholder and manager of the Siding Company. No doubt the parties deemed it advisable that he be required to perform the same acts as the Siding Company was to perform under paragraph 3 of the agreement. For, if the corporation was dissolved, Wil Chaussee would hold rights to stock that appellants might have to obtain to satisfy Kathman.

The remedies provided in the contract being clearly exclusive, the judgment of the trial court is affirmed.

ROSELLINI, C. J., FINLEY, HAMILTON, and HALE, JJ., concur.

---

November 3, 1966. Petition for rehearing denied.