Hershal W. **HENSLEY** and Wanda V. Hensley, Appellants (Plaintiffs),

v.

Roy C. **WILLIAMS** and Connie M. Williams, Appellees (Defendants).

No. 86–112.

Supreme Court of Wyoming.

Oct. 6, 1986.

James R. McCarty, Casper, for appellants.

Douglas R. McLaughlin, Douglas, for appellees.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This case involves the interpretation of an executory contract for the purchase of land where the parties each contend that the other is in default. The trial court granted appellees' motion for summary judgment upon a finding that appellants were in default for not making the required payments pursuant to the terms of the contract.

We affirm.

On September 29, 1979, appellees agreed to sell a ten-acre tract of land to appellants pursuant to a contract, the contentious parts of which are as follows:

"*Terms of Payment.* The purchase price shall be paid by the Buyer, as follows:

"(a) The down payment to be paid to the Seller upon the execution of this agreement is $40,000.

"(b) The balance of the purchase price in the amount of $42,500 shall be paid in consecutive monthly installments of $561.65 each including interest at ten percent (10%) per annum computed to the date of each monthly payment, which monthly payment shall be applied first to interest and the balance to principal. The Buyer shall execute an installment promissory note which provides for the payment of [$]42,500.00 at the rate of ten percent (10%) per annum at $561.65 per month for a period of 10 years.

"(c) The Buyer covenants and agrees that Buyer will pay to the Escrow Bank on or before the fifteenth (15th) day of each calendar month commencing with the month of November, 1979, the aforesaid monthly installments of $561.65 as well as to pay the taxes timely and otherwise perform the obligations and covenants of the Buyer hereunder.

"7. *Balloon Payment.* Buyer agrees that after the expiration of five (5) years (60 months) Buyer shall make a balloon payment upon the principal and interest due as of the 1st day of October, 1984.

"8. *Type of Deed.* In addition to the foregoing terms regarding price and payments, the parties hereto also covenant and agree that the conveyance from the Seller to the Buyer shall be by customary form of warranty deed with the warranties limited to lawful claims of persons claiming by, through, and under the Seller.

"9. *Escrow.* The parties shall cause an escrow to be opened at The Converse County Bank, Douglas, Wyoming ('Escrow Bank'), for the purpose of carrying out the provisions of this agreement. Each party agrees to execute escrow instructions and any further instruments which may be necessary to consummate the transaction and effectively convey and assign the subject property from the Seller to the Buyer, and to deposit into escrow all documents which the escrow instructions shall call upon them to deposit. The parties will deposit into escrow the following documents:

"(a) The original of this agreement;

"(b) The warranty deed;

"(c) The commitment to issue title insurance;

"(d) The installment promissory note.

"The foregoing documents shall be deposited for safekeeping until ultimate delivery with the Escrow Bank in order that said Escrow Bank may hold the documents pending performance of the Buyer covenants hereunder, with instructions to deliver the documents to the Buyer upon timely completion of all payments, or to return the documents to the Seller in the event of a default, as will be more fully set forth in this agreement.

\* \* \* \* \* \*

"14. *Default.* In the event that the Buyer shall fail to meet the installment requirements of this agreement and shall be in default on the payments of any sums due hereunder for a period of more than thirty (30) days, then and in that event Seller may regard such breach and default to constitute a material breach of this agreement and thereupon may cancel and terminate this agreement and all rights of the Buyer hereunder. In such case the Escrow Bank shall return to the Seller the deed and any other papers or documents held by the Escrow Bank for safekeeping until ultimate delivery."

The promissory note, in addition to the standard acceleration and attorney's fee clauses applicable in the event of nonpayment, provided the same payment provisions as the contract with the exception that the balloon payment provision was not mentioned.

At the time of sale, the ten acres purchased by appellants were encumbered by two mortgages. Despite the encumbrances, appellants continuously made their monthly payments through September 1984. On October 25, 1984, appellants' attorney sent a letter to appellees advising them that, because the mortgages against the property had not been released and because there was not free access to the property, appellants rescinded the contract. The letter also requested that appellees

return all of the money appellants had paid pursuant to the terms of the contract.

On January 22, 1985, appellants filed a complaint against appellees in district court, alleging in substance that when they made arrangements during the month of October 1984 to make their final balloon payment pursuant to the contract, they discovered that the mortgages against the property had not been released; that they did not have free access to the property; and that by reason thereof they should have judgment against appellees for the amount they paid to them. Appellants alleged in the alternative that, if the court should find them in default, appellees' remedy should be restricted to that of a mortgagee under Wyoming law.

Appellees timely filed an answer denying the essential allegations of appellants' complaint and asserting that payment of the final balloon payment was a condition precedent to delivery of good and merchantable title to appellants. Appellees also filed a counterclaim alleging appellants' default for nonpayment and praying for an order either terminating appellants' rights in the property and returning the monies they paid on the purchase price or directing appellants to pay the balance due under the promissory note. Appellants denied the essential allegations of the counterclaim and prayed that appellees take nothing.

On October 3, 1985, appellees filed their motion for summary judgment in which they alleged that appellants were in default as a matter of law for failing to timely make the balloon payment and pay the 1984 taxes. Accompanying the motion were the affidavits of appellees and depositions of the parties and real estate agents involved in the sale. Appellants, apparently relying on the pleadings and the depositions to demonstrate the existence of a substantial question of fact, did not file opposing affidavits.

On February 7, 1986, the court entered partial summary judgment for appellees on their counterclaim after finding that neither appellees' failure to release the mort-

gages nor the alleged lack of access excused appellants' failure to make the payments under the contract. This partial summary judgment also gave appellees the election to either (1) terminate the agreement, repossess the papers held in escrow, retake possession of the property, and return all sums paid after retaining a reasonable sum for rental or (2) proceed to take judgment against appellants for those sums due under the terms of the promissory note.

Appellees elected to take payment pursuant to the terms of the promissory note. On March 24, 1986, after appellees filed their affidavits of the amounts due, the court entered judgment for appellees against appellants for the balance due on the note, interest thereon, costs, and attorney's fees, which balance due was equal to the balloon payment owing pursuant to the terms of the contract.

Appellants raise the following issues: "1. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AND RULING THAT THE HENSLEYS, RATHER THAN THE WILLIAMSES, DEFAULTED UPON THE CONTRACT.

"2. WHETHER THE COURT ERRED IN RULING THAT THE SELLERS WERE ENTITLED TO ENFORCE PAYMENTS DUE UNDER THE PROMISSORY NOTE WHICH WAS SIGNED ALONG WITH THE CONTRACT FOR DEED.

"3. WHETHER THE COURT ERRED IN GRANTING SUMMARY JUDGMENT SINCE THE CONTRACT, THE PLEADINGS AND THE DEPOSITIONS RAISED FACTUAL QUESTIONS CONCERNING THE INTENT OF THE PARTIES AND CONCERNING THE QUESTION OF WHICH PARTY WAS IN DEFAULT UPON THE CONTRACT."

Appellants contend that the contract is ambiguous in that it does not provide when or if the mortgages against the property must be released of record and in that it required the signing of a promissory note in addition to the contract. Because of these ambiguities, appellants claim that the court was required to look to extrinsic evidence, which evidence demonstrates an issue of material fact making summary judgment improper.

■ Whether an ambiguity exists is a question of law. *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463 (1980); *State v. Moncrief,* Wyo., 720 P.2d 470 (1986). We do not find the contract to be ambiguous and, therefore, limit our review to the language of the contract itself.

■ The failure of the contract to specifically provide that the mortgages be released of record prior to final payment being made does not create an ambiguity. We can understand appellants' reluctance to make the final payment prior to being assured that they would receive good and merchantable title to the property, but we cannot now provide appellants with that assurance by rewriting the contract and finding an ambiguity where none existed before.

■ A deed placed in escrow creates no warranties until the conditions of the escrow are met. *Dunham and Ross Company v. Stevens,* Tex.Civ.App., 538 S.W.2d 212, 216–217 (1976), citing *Williams v. Shamrock Oil & Gas Co.,* 128 Tex. 146, 95 S.W.2d 1292, 107 A.L.R. 269 (1936). See also generally 77 Am.Jur.2d, Vendor and Purchaser § 564 (1975). The contract between the parties clearly provided that timely payment of the total purchase price was a condition precedent to the delivery of the warranty deed to appellants. This is not a case where appellees are being accused of misrepresenting the status of the title, nor have they done so. Again, the contract clearly provided that appellees represented and warranted that they were the owners in fee simple subject only to the exceptions contained in the title insurance commitment. The exceptions were the mortgages which are the subject of this appeal. This is also not a case where appellants can contend that the alleged defects in the title cannot be removed by

appellees. The depositions and exhibits which are a part of the record on appeal clearly show that the mortgages were released of record prior to the commencement of this action and that the property joined a public road. We, therefore, hold that appellants were in default for failure to pay the full purchase price for the property, which was a condition precedent to receiving good and merchantable title to the property. We also hold that appellees were not in default for the reason that they were not required to convey good and merchantable title until appellants paid the purchase price in full.

■■■ Appellants contend that there is an ambiguity, not only because of the existence of the promissory note in addition to the contract but also because the contract does not refer to the provisions in the promissory note as an alternative remedy in the event of default and because the payment provisions of the note do not coincide with the terms of the contract. We do not agree. A written agreement may consist of more than one document, and reference in a contract to extraneous writings renders them part of the agreement. *Busch Development, Inc. v. City of Cheyenne,* Wyo., 645 P.2d 65 (1982). The contract must be construed as a whole, and meaning should be afforded to all of the language if a reasonable construction can be achieved. *Rossi v. Percifield,* Wyo., 527 P.2d 819 (1974). The district court correctly applied these principles in finding the two default provisions to be alternatives.

Appellants' only concern regarding the payment of the purchase price was whether the mortgages would be released prior to the time they made the balloon payment. We, therefore, fail to see the relevance of the differing payment schedules to the question of whether or not appellants were in default, particularly in view of the fact that payment was not made pursuant to the note or the contract.

Appellants also contend that there are substantial questions of fact which would show that it was not the intent of the parties that the default provisions of the

promissory note be enforced. Having found that the default provisions contained in the contract and the note provide alternative remedies and are not ambiguous, we will not resort to extrinsic evidence in an attempt to determine what may have been the intent of the parties. *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* supra.

For all of the reasons stated above, we find that the district court did not err in granting partial summary judgment for appellees.

Affirmed.