George D. MARPLE and Esther M. Marple, Appellants (Plaintiffs),

v.

WYOMING PRODUCTION CREDIT ASSOCIATION; and to all Other Persons Unknown Claiming any Legal Equitable Right, Title, Estate, Lien or Interest in the Real Property Described in the Complaint Adverse to Plaintiffs' Title or any Cloud on Plaintiffs' Title Thereto, Named as Does I to XX, Inclusive, Appellees (Defendants),

James E. Pyer and Betty J. Pyer, (Defendants).

No. 87–170.

Supreme Court of Wyoming.

Feb. 29, 1988.

H. Richard Hopkinson, Worland, for Marple.

William R. Shelledy, Jr., Worland, for Wyoming Production Credit Ass'n.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

This documentarily misconstructed and mispleaded real estate sales transaction case is presented on appeal from summary judgment granted against the property sell-

er in favor of the chronologically subsequent lender to whom the buyer mortgaged the property. In application of recorded instruments and record demonstration of the lender's knowledge of the retained vendor security interest and unpaid purchase price, we reverse and remand, and do not address other academically interesting but legally unpersuasive inquiries involving vendor's liens or merger as being inapplicable to the facts of this case. *Tri–State National Bank v. Saffren,* Wyo., 726 P.2d 1081 (1986).

In July 1978, George and Esther Marple, as sellers (appellants), entered into a real estate sales arrangement for the sale of their 15–acre home and subdivision tract to James and Betty Pyer for a purchase price of $145,000. The unusual nature of the litigation was begun by the curious arrangement initiated by the sales transaction which has been considered by litigants and the trial court to be an installment sales transaction. We do not concur with that exception since title was not retained in seller. E. George Rudolph, *The Wyoming Law of Real Mortgages* at 147 (1969). See *Baldwin v. McDonald,* 24 Wyo. 108, 156 P. 27, 37 (1916):

> " ' * * * Whether any particular transaction does thus amount to a mortgage or to a sale with a contract of repurchase must, to a large extent, depend upon its own special circumstances; for the question finally turns, in all cases, upon the real intention of the parties as shown upon the face of the writings, or as disclosed by intrinsic evidence.' " Quoting from Pomeroy's Equity Jurisprudence § 1195 (3d ed.).

Cf. *Angus Hunt Ranch v. REB, Inc.,* Wyo., 577 P.2d 645 (1978).

The agreement provided for conveyance of the property to buyer, and was arranged by two separate deeds, since apparently a portion of the real estate was not warrantable in title. Provision was then made in sales agreement for an escrow to be established in which a "default" quitclaim deed would be escrowed to reconvey upon buyer default. A self-standing promissory note

was also executed, evidencing the purchase price balance as computed from a sales price of $145,000, an earnest money deposit of $1,000, and a "down payment" of $49,-500 which was realized by the apparently expected action of the buyer borrowing the down payment by means of a loan on the property following conveyance. The remaining balance of $94,500, as documented in the promissory note and defined in the agreement, was payable on an amortized schedule of 20 annual installments. Consequently, the transaction invoked a sale with no significant down payment, in which the buyers borrowed the down payment based upon the security of the purchased property. All this occurred, most surprisingly, with apparent "assistance" of legal advice.[1]

One other step occurred in the process as apparently part of the organized plan and arrangement, which involved the recording of the agreement in order to make a record of the retained security interest in the property held by seller. Why the normal, usual, and customary arrangements of subordination agreement, reconveyance, or even the execution of a normal form mortgage were not used is not demonstrated in the record, but it is indicated that sellers' attorney thought that conveyance could provide opportunity for foreclosure of the real estate lien without the necessity of formal foreclosure proceeding by the use of an escrowed reconveyance quitclaim default deed as apparently provided in order to bypass debtor right of redemption.

Buyers did obtain the down payment by executing a mortgage on the purchased property in favor of the First National Bank of Worland (First National Bank) in an amount undefined in the record, but apparently of about $49,500, and sequentially, pursuant to recording dates and in accord with the indicated intent of the parties, from available documents, the arrangement was completed by the First National Bank, providing a first lien and arranging to retain for sellers a security interest subordinate thereto in the amount of the unpaid purchase price of

---

1. Present counsel for Marple is not the attorney who drafted the sales documents.

$94,500, by recording the sales agreement. Since no initial reconveyance of the property was included in the transactional scheme, title in fee was vested in the buyer, subject to First National Bank's first lien, and secondary lien rights for seller. Contrary to the concept of litigants and the trial court, we do not find presented an installment sales contract since legal title to the property is vested in buyer and all that remained in seller was a right to payment and reserved security interest. *Baldwin v. McDonald,* supra. Concurrently executed sales transaction documents should be considered together. *Hensley v. Williams,* Wyo., 726 P.2d 90 (1986); *DeLoney v. Dillard,* 183 Ark. 1053, 40 S.W.2d 772 (1931); *Ashbrook v. Briner,* 137 Neb. 104, 288 N.W. 374 (1939). *See Rush v. Anestos,* 104 Idaho 630, 661 P.2d 1229 (1983). Although the court gives effect to the intention of the parties as defined by the text of written agreements made, a security interest arrangement, in case of doubt, should be defined as a mortgage in order to protect all parties by denial of forfeiture and affording statutory rights of redemption. *Martino v. Frumkin,* 11 Ariz.App. 160, 462 P.2d 853 (1970). The status of executory sales agreement is foreclosed by actual conveyance of fee title. *Rush v. Anestos,* supra.

Thereafter, as expectably occurred in the nature of events, Pyers commenced business financing for a greenhouse operation about three years later by executing real estate mortgages as encumbrances on the property to the Wyoming Production Credit Association (PCA), first in the amount of $22,500, and then in the amount of an additional $100,000. After financial troubles developed (or continued), Pyers filed bankruptcy. With the recognized first lien position of the First National Bank, this litigation ensued as a Marple quiet-title action to contest priority security rights for themselves, as sellers, against the PCA, who by counterclaim sought an order of foreclosure and a declaration of priority. Never to keep the case simplified, sellers had earlier extracted the quitclaim deed from the escrow file upon default of payments on the promissory note and recorded, followed by a notice to quit served on Pyers. The litigation included as defendants both Pyers, as buyers, and the PCA, as holder of the two mortgages, and was immediately delayed by automatic stay under 11 U.S.C. § 362(a) (1982) derived from Pyers' bankruptcy.

██ After vacation of bankruptcy stay, the case matured to present status by a motion for summary judgment filed by Marples which contended in trial brief that justification existed for judgment as a matter of law by a priority equitable mortgage arising from the sales transaction. PCA reciprocated with a summary judgment motion, conversely contending for a priority interest by recorded mortgages as adverse to the retained interest of vendors, with the resulting court decision being to favor the lender over the vendors.[2] Disposition of

**2.** The convolutions of the initial documentation is not diminished by missing clarity and appropriateness of pleading. Marples' quiet-title complaint alleged the equitable mortgage against Pyers, claimed what is in the nature of foreclosure rights by virtue of filing a quitclaim deed, and prayed for a decree of quiet title, including the most curious paragraph:

"Declaring that defendants, James E. Pyer and Betty J. Pyer, and Defendant, Wyoming Production Credit Association, and all persons claiming under them have no estate, right, title, lien or interest in or to said property or any part thereof."

It seems clear on the face of the complaint that it failed to state a claim upon which relief could be granted. First, if there was an equitable mortgage, quiet title was not the remedy as compared to foreclosure, *Baldwin v. McDonald,* supra; *Albright v. Henry,* 285 Minn. 452, 174 N.W.2d 106 (1970), and secondly, since clearly PCA had a mortgage interest, the question was only whether it was junior or senior to the mortgage interest of seller. Additionally, as a fact of purity in pleading, plaintiff was apparently not in possession when instituting the quiet-title action. See Form 16, Appendix of Forms, W.R.C.P., as compared to the complaint, "are entitled to possession." See also, § 1–32–201, W.S.1977 defining the basis for a quiet-title proceeding.

Pyers answered with affirmative defenses in a five-page response and then ultimately disappeared from the litigation by counsel advice as a notification to the court prior to hearing that the Pyers had no interest in the matter for hearing and would not appear. There was no judgment or final-order disposition of rights between Marples and Pyers. PCA responded to

the case occurred in summary-judgment order, wherein a decision on the litigated issues between Pyers and Marples was not made, but:

" * * * [T]he motion for summary judgment filed by the Plaintiffs [Marples] is hereby denied and * * * the motion for summary judgment of the defendant is hereby granted and the Court further states that the subject land of said lawsuit is subject to a mortgage in favor of the FIRST NATIONAL BANK and is subject to a mortgage in second position to the Defendant, WYOMING PRODUCTION CREDIT ASSOCIATION."

No order of foreclosure, for which the prayer had been made and to which PCA was clearly entitled, was included with the litigated issue being one of lien priority only. Financial statements furnished by Pyers to PCA predating the first recorded PCA mortgage referred to the 15–acre tract "Mortgage to Marple" with balance due in 1981 of $89,361 as a listed long-term liability, and showed the property with a stated value of $178,292 as borrowers' principal asset. The total of all asset equity of $77,643 was derived after the $89,361 long-term mortgage indebtedness of Marples was deducted. The record also contains

evidence that some portion of the advances from PCA loan proceeds was knowingly provided to make payments on the Marple and First National Bank indebtednesses. The PCA debt was first shown on the financial statement records for the 1982 statement in the amount of $73,592 as then increased by the 1985 statement to total $143,726.[3]

Wyoming's classification as a mortgage lien state has long since been established, *Robinson Mercantile Co. v. Davis,* 26 Wyo. 484, 187 P. 931 (1920), and consequently our initial inquiry is directed to analysis of the documentation to determine whether a lien document in recorded form as sufficient to protect the promissory note security claim against the property was created in the transactional arrangement.

On that question, we would apply § 34–1–127, W.S.1977.[4] The documentation clearly reveals that the conveyances to the buyers were not intended to be absolute, but rather that a retained security interest was to exist which was authenticated by the recorded sales document. That document, referencing the unpaid balance and the method of payment, is sufficient to constitute the desired real estate mortgage security lien instrument[5] when

---

the litigation by answer and counterclaim, contending for a priority right and invalidity of lien claim of the seller, and praying:

"1. That the Court find and determine that here is due and owing Plaintiff on said notes Exhibit 'A', Exhibit 'B' and Exhibit 'C' and said mortgages, Exhibit 'D' and Exhibit 'E', the sum of $113,384.27 plus interest in the sum of $20,908.40 to May 27, 1986 and accruing at the rate of $4.50 daily, together with interest from and after May 27, 1986, and any advances that might be made during the pendency of this action.

"2. For an Order to foreclose the subject property and the status of all claims thereon."

3. Understandably, in the nature of summary-judgment disposition, but otherwise not clearly explicable in reasoned preparation and presentation, documents normally to be included in the record but not presented include: (a) promissory note from Pyers to Marples; (b) escrow instructions; (c) PCA's loan file documentation relating to credit analysis, applications and approvals; and (d) First National Bank's note and security documents.

4. "When a deed or mortgage purports to be an absolute conveyance in terms, but is made

or intended to be made defeasible by force of defeasance, or other instrument for that purpose, the original conveyance shall not be thereby defeated or affected as against any person other than the maker of the defeasance, or his heirs or devisees, or persons having actual notice thereof, unless the instrument of defeasance shall have been recorded in the office of the register of deeds [county clerk] of the county where the lands lie." Section 34–1–127, W.S.1977.

5. Considerable examination and review have been pursued by the parties on the topic of equitable mortgage. Characterizations and classifications seem to afford little benefit, except the normal definition of an equitable mortgage is to be an instrument that was not properly prepared or executed to constitute a legal mortgage. *Coast Bank v. Minderhout,* 61 Cal.2d 311, 38 Cal.Rptr. 505, 392 P.2d 265 (1964), overruled on other grounds sub nom. *Wellenkamp v. Bank of America,* 21 Cal.3d 943, 148 Cal.Rptr. 379, 582 P.2d 970 (1978); *Rex v. Warner,* 183 Kan. 763, 332 P.2d 572 (1958); George E. Osborne, Mortgages, Ch. 2 at 32, (2d ed. 1970).

considered in conjunction with the promissory note for which it served as a real estate security document. The parties are named; the property is identified by legal description; the purchase price and security indebtedness provided; and provision for conveyance to the buyer made with detail of retained security for payment defined. We determine this character of information, when included in an acknowledged instrument signed by both parties and subsequently recorded, is sufficient to constitute a legal mortgage, no matter if not specifically labeled as a mortgage by heading. George E. Osborne, Mortgages, Ch. 2, § 23 at 33 (2d ed. 1970). This is especially true as here accompanied by promissory note and accommodated by concurrent conveyance of the real estate in fee to the buyer as an executed transaction. Substance-over-form criteria of modern conveyancing is appropriately evidenced. Compare *Frank v. Hick*, 4 Wyo. 502, 35 P. 475 (1893), where the document lacked a subscribing witness and was only signed by the president, and consequently was unrecordable and only "effective between the parties as an equitable mortgage." Id. 35 P. at 477. Practical conveyancing standards have improved since the early date when formalism predominated in conveyancing requirements.

■ Inept as the handling of the transaction documents are demonstrated to have been, no lack of clear, defined, and definite notice to the successor lender existed. Consequently, we hold that summary judgment was erroneous in granting to PCA a priority mortgage lien as superior to any claim of appellants.

■ The question remaining is further disposition of the case. As an affirmative defense, PCA had contended that the transaction by escrow release and recording of the quitclaim deed from Pyers to Marples should not permit foreclosure in a fashion which denied junior lienholder rights of redemption. We agree. The invalidity of an attempted foreclosure by an escrowed quitclaim deed in contravention of foreclosure statutes and right of redemption needs no particular discussion beyond the recognition of the fundamental principle. Recording of the quitclaim deed could terminate neither the rights of redemption of the mortgagor nor security interests and rights of redemption of the holders of recorded junior liens. Section 1–18–103, W.S.1977 (redemption by mortgagor); § 1–18–104, W.S.1977 (redemption by judgment creditors and junior lienholders); *Brown v. Hermance*, 233 Iowa 510, 10 N.W.2d 66 (1943); Rudolph, supra at 74; Osborne on Mortgages, supra, "clogging," § 96 at 144; Robert Kratovil and Raymond J. Werner, Modern Mortgage Law and Practice Second Edition, § 1.3(c) at 31 (1981).

What is determined is that, after the initial sale transaction was signed and executed by conveyances and recording of the sales agreement document to evidence the retained security interest, those documents served to define a reserved, recorded security interest sufficient to afford a priority superior to the subsequent PCA real estate mortgage.

Section 34–1–102, W.S.1977 provides:

"The term 'conveyance' as used in this act, shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, alienated, mortgaged or assigned, or by which the title to any real estate may be affected in law or in equity, except wills, leases for a term not exceeding three (3) years, executory contracts for the sale or purchase of lands, and certificates which show that the purchaser has paid the consideration and is entitled to a deed for the lands, and contain a promise or agreement to furnish said deed at some future time."

The delivered deed concluded the executory nature of an installment sales arrangement and resulted in a defined mortgage lien with the effect provided by § 34–1–121, W.S.1977. By this determination, we accord to the recorded instrument the rights of a security document, namely a real estate mortgage, which is subject to foreclosure by Marples with proper pleading, and would accord to successors who may hold junior liens, such as PCA, rights

as a junior lienholder for redemption pursuant to § 1–18–104, W.S.1977.

Reversed and remanded in accord with this opinion.