**CLIFF & CO., LTD., a Wyoming Corporation; and Sam Ratcliff, Appellants (Defendants),**

v.

**Andrew W. ANDERSON; Norman C. Moore; Coulter Enterprises, a Wyoming Partnership; FDIC, formerly Stockmens Bank & Trust Company, a Wyoming Banking Corporation; and Dorr Investments, a Wyoming Partnership, Appellees (Plaintiffs).**

No. 88–255.

Supreme Court of Wyoming.

July 11, 1989.

Michael A. Maycock, Gillette, for appellants.

J. John Sampson, Sheridan, for appellees.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

Appellants Cliff & Co., Ltd. and Sam Ratcliff appeal from an order of the district court confirming the foreclosure sale of a hotel and bar and granting a deficiency judgment to appellees Andrew W. Anderson, Norman C. Moore, Coulter Enterprises, FDIC, and Dorr Investments. Appellants more particularly contest the district court's prior order in this action which granted appellees a partial summary judgment and a decree of foreclosure upon the finding that appellees were entitled to foreclose their mortgage on the subject premises and to obtain a judgment for any deficiency.

We affirm.

Appellants present the following issues for our consideration:

A. WHETHER THE COURT BELOW ERRED IN GRANTING A DEFICIENCY JUDGMENT BASED UPON A SUMMARY JUDGMENT IMPROPERLY RENDERED WHEN THERE WAS A GENUINE ISSUE OF MATERIAL FACT IN EXISTENCE.

B. WHETHER THE COURT BELOW ERRED BY RELYING UPON FACTS WHICH ARE NOT CONTAINED IN THE RECORD.

The genesis of this controversy was a real estate transaction occurring near the end of the energy boom in Campbell County, Wyoming, in the early part of this decade. In June 1981 appellees, as sellers, entered into an agreement with appellant Cliff & Co., Ltd., as buyer, and with appellant Ratcliff, Abner Castleberry, and Edward Young, as individual guarantors,[1] for

---

1. Appellants Ratcliff, Castleberry, and Young apparently were the principal, if not sole, owners and officers of Cliff & Co., Ltd. Castleberry died during the course of the proceedings below. Although Castleberry and Young were defendants below, neither (or, in the case of Cast-

the sale of the Montgomery Bar and Hotel in Gillette, Wyoming. Appellees owned all of the stock in Montgomery Bar and Hotel, Inc., a Wyoming corporation (hereinafter "the corporation"), which in turn owned all the assets of the hotel and bar, including the land, building, inventory, and liquor license. The transaction was accomplished on June 16, 1981, by the execution of a series of documents, the nature and effect of which are at the center of the dispute in this case.

The documents include a purchase agreement by which appellant Cliff & Co., Ltd. agreed to purchase all the stock of the corporation for a total sum of $476,054.41, with a down payment of $126,054.41 and the $350,000 balance to be evidenced by a promissory note and to be paid in monthly installments into an escrow account at Stockmens Bank & Trust Company.[2] Concurrently, appellant Cliff & Co., Ltd. executed a promissory note to appellees for the balance of the purchase price. The promissory note similarly provided for monthly installments of principal and interest to be paid into the escrow account. The purchase agreement and promissory note were personally guaranteed by Castleberry, Young, and appellant Ratcliff. Additionally, in accordance with the purchase agreement, appellant Cliff & Co., Ltd. and the corporation (the stock of which had been conveyed to Cliff & Co., Ltd.) executed a mortgage (designated as "Mortgage Deed") granting appellees a mortgage interest in the subject property as security for the indebtedness. The mortgage was recorded on July 13, 1981. Appellant Cliff & Co., Ltd. and the corporation also executed a security agreement granting appellees a security interest in various collateral of the corporation, primarily consisting of the furniture and equipment of the business. A corresponding financing statement was filed. At the same time, and as further security for the indebted-

ness, appellant Cliff & Co., Ltd. executed an assignment back to appellees of the stock of the corporation. Finally, appellant Cliff & Co., Ltd. and appellees signed escrow instructions to Stockmens Bank & Trust Company providing for payments on the promissory note to be made to the escrow account and for disbursements to be made to appellees as directed.

Although not otherwise indicated in the record, the complaint and amended complaint of appellees indicate that, by warranty deed dated December 21, 1981, the corporation deeded the subject property to appellant Cliff & Co., Ltd. and that such deed was recorded on February 25, 1982. In their answer to the amended complaint, appellants admitted to that averment.[3]

Debt payments pursuant to this rather cumbersome transaction were made as agreed until 1986 when the buyer and guarantors (appellants, et al.) fell into default. As a result, the parties entered into a "Modification Agreement" wherein appellees agreed to reduced monthly installment payments for the year 1987 in consideration for which appellant Cliff & Co., Ltd. executed an assignment of the premises' liquor license to appellees. The liquor license assignment was placed in the original escrow account for receipt by appellees in the event of further default. The modification agreement provided that, except as therein modified, the original purchase documents were to remain in full effect.

By early 1987 appellants (and Castleberry and Young) were unable to make the payments as modified. After notices demanding payment, appellees filed suit on May 22, 1987, seeking judgment on the promissory note, foreclosure on both the mortgage and the lien created by the security agreement, and a deficiency judgment. By amended complaint appellees added claims seeking delivery of the assigned and

---

leberry, his representative or estate) pursued an appeal.

**2.** Stockmens Bank & Trust Company subsequently went into receivership with FDIC as the receiver.

**3.** The parties to this appeal somewhat surprisingly do not mention this warranty deed in their briefs, apparently attaching little significance to it. The vesting of title, however, is a critical factor with respect to determining the nature of the transaction at hand. *See infra.*

escrowed liquor license and for an award of the income from the property. The defendants answered, asserting as an affirmative defense that appellees' only remedy upon default was enforcement of the forfeiture provision contained in the purchase agreement.

Appellees then moved for summary judgment. Affidavits and the transaction documents were submitted by the parties in support of and in opposition to the motion. After a hearing, the district court entered a partial summary judgment and decree of foreclosure in favor of appellees. There was a factual dispute as to the amount due and owing on the obligation; however, the parties subsequently stipulated to that amount and to appellees' reasonable attorney's fees and costs. In the meantime, the district court had appointed a receiver to manage the property.

Appellees, as highest bidders, purchased the property for $100,000 at the foreclosure sale held May 20, 1988.[4] Upon appellees' motion, the district court entered an order confirming the foreclosure sale and granting a deficiency judgment for $190,233.01. This appeal followed.

Appellants' primary contention, as we understand it, is to the following effect: The purchase agreement is in the form of an installment land contract;[5] the forfeiture provision contained therein is consistent with an installment land contract but is inconsistent with the remedy provisions contained in the note and mortgage; thus, there is an ambiguity in the documents which required the presentation of extrinsic evidence on the question of the parties' intent and precluded the entry of summary judgment authorizing foreclosure. Appellants, understandably, seek a construction of the agreement (or at least a factual issue as to its construction) whereby the forfeiture provision would be considered the exclusive remedy upon default and which would accordingly relieve them from the deficiency judgment.[6] Although we sympathize with appellants' plight, we are unable to interpret the agreement in the manner urged by them.

This is essentially a contract case and, in order to evaluate appellants' contentions, we must apply our established rules of contract interpretation. The primary purpose in interpreting or construing a contract is to determine the intent of the parties. *True Oil Company v. Sinclair Oil Corporation,* 771 P.2d 781 (Wyo.1989); *Farr v. Link,* 746 P.2d 431 (Wyo.1987). The interpretation and construction of a contract are done by the court as a matter of law. *Id.; Amoco Production Company v. Stauffer Chemical Company of Wyoming,* 612 P.2d 463 (Wyo.1980). Where an agreement is in writing and the language is clear and unambiguous, the intent of the parties is to be secured from the words of the contract. *True Oil Company,* 771 P.2d 781; *Amoco Production Company,* 612 P.2d 463. The contract as a whole should be considered, taking into consideration the relationship between the various parts. *True Oil Company,* 771 P.2d 781; *Kost v. First National Bank of Greybull,* 684 P.2d 819 (Wyo.1984).

A written agreement may consist of several documents, and reference in a contract to extraneous writings renders them part of the agreement. *Hensley v. Williams,* 726 P.2d 90 (Wyo.1986); *Williams v. Waugh,* 593 P.2d 583 (Wyo. 1979). Sales transaction documents concurrently executed should be considered together. *Marple v. Wyoming Production*

---

**4.** The sale figure was fairly close to the value of the property as appraised. The low figure in relation to the purchase price reflects the depressed local property market existing after the decline in energy industry activity.

**5.** Installment land contracts are alternatively known as contracts for deed.

**6.** The posture of appellants in this case is diametrically opposed to that normally taken by purchasers in cases of this sort. In the usual situation, the purchaser wishes to avoid the harshness of a forfeiture and seeks to have the agreement construed as a mortgage with the attendant protections afforded by mortgages, including the right of redemption and the right to surplus proceeds upon foreclosure sale. Appellants' position is again a reflection of the previously noted deflated property values in Campbell County.

*Credit Association,* 750 P.2d 1315 (Wyo. 1988); *Hensley,* 726 P.2d 90.

If a contract is ambiguous, the determination of the parties' intent may be made by resort to extrinsic evidence. *True Oil Company,* 771 P.2d 781; *Rouse v. Munroe,* 658 P.2d 74 (Wyo.1983). A contract is ambiguous if it is obscure in its meaning because of indefiniteness of expression or because of a double meaning being present. *Farr,* 746 P.2d 431; *E & E Mining, Inc. v. Flying "D" Group, Inc.,* 718 P.2d 58 (Wyo.1986). Whether or not a contract is ambiguous is a question of law for the court. *Farr,* 746 P.2d 431; *Hensley,* 726 P.2d 90. An ambiguity justifying extrinsic evidence is not generated by the subsequent disagreement of the parties concerning the contract's meaning. *Amoco Production Company,* 612 P.2d at 465.

With the foregoing principles in mind, we turn to the terms of the parties' agreement and particularly to the terms regarding the sellers' remedies upon default. The purchase agreement is the primary transaction document. It provides for the buyer's purchase of the corporate stock from appellees, specifying, *inter alia,* purchase price, payment terms, security, and default remedy. The default provision in the purchase agreement provides as follows:

> 4. *Failure to Comply.* In the event that BUYER fails or neglect[s] to comply with any terms or make any payments when said payments are due and payable *SELLERS shall have the right* at any time thereafter to notify the BUYER in writing of the nature and extent of such default, and if such default is not corrected within thirty (30) days after the mailing of said notice, the *SELLERS shall have the right* at any time thereafter, without further notice, *to terminate and cancel all rights of the BUYER under this agreement, and all payments made hereunder by the BUYER shall be kept and retained by the SELLERS as liquidated damages and rent.* The SELLERS shall have the further right to re-enter and take possession of said corporate

assets and be released of all obligations to convey the same to the BUYER.

(Emphasis added.) We agree with appellants that the above provision is a standard forfeiture provision of the type frequently encountered in installment land contracts. We also note, as did the district court, that the language of the provision is permissive rather than obligatory.

The purchase agreement additionally and specifically incorporates by reference the promissory note representing the unpaid balance and the security documents including the mortgage on the realty, the security agreement and financing statement with respect to the personalty, and the assignment back of the corporate stock. The default provision in the promissory note reads:

> A failure to pay the principal or any part thereof or interest or any part thereof when due shall cause the whole note to become due and collectible at the option of the holder. Failure to exercise this option shall not constitute a waiver of the right to exercise same at any other time.

Correspondingly, the mortgage addresses the remedy upon default by providing for notice of breach to mortgagors and thirty days to cure the breach and providing that, upon failure to cure:

> Mortgagees shall declare the whole of the then indebtedness secured hereby immediately due and payable, and it shall be lawful for Mortgagees to enforce the provisions of this mortgage either by or in equity, as they may elect, or to foreclose this mortgage by advertisement and sale of the above described property, at public ven[ ]ue, for cash, according to Wyoming statutes governing mortgage foreclosures, and cause to be executed and delivered to the purchaser at any such sale a good and sufficient deed or deeds of conveyance of the property so sold and to apply the net proceeds arising from such sale first to the payment of the costs and expenses of such foreclosure and sale and in payment of all monies expended for taxes, assessments, repairs, insurance or other advance-

ments, together with stipulated interest thereon from respective advancement dates to the date of such sale, and then to the payment of the balance due on account of the principal and interest indebtedness secured hereby, together with interest at the same rate thereon up to the time of such sale, and the surplus, if any, shall be paid to said Mortgagors, their legal representatives, heirs, successors or assigns; there shall be included as due from Mortgagors in any or all court proceedings all related costs, including abstract extension and such attorney fees and costs as may be decreed by the court, and in any statutory foreclosure by advertisement, all costs and a reasonable attorney fee. *Mortgagors consent to entry of personal judgment for and upon any deficiency of said indebtedness remaining unliquidated following foreclosure or other sale proceeds of the real and collateral security as aforesaid.*

(Emphasis added.) Finally, with respect to the furniture and equipment, the security agreement, by incorporation of the financing statement, provides appellees with the remedies available under Article 9 of the Uniform Commercial Code and includes a covenant by the debtors to pay any deficiency.

Considering all the above instruments together as reflecting the parties' agreement, it is apparent that the forfeiture provision of the purchase agreement expresses, in permissive terms, a remedy different from those found in the mortgage, note, and security agreement. We do not agree with appellants, however, that the existence of more than one remedy creates an ambiguity.

An argument similar to that of appellants was presented to this Court in *Hensley*, 726 P.2d 90. In that case, a real estate transaction was accomplished by an installment land contract accompanied by a promissory note for the balance remaining after the down payment. In an arrangement resembling that in the instant case, the installment contract in *Hensley* contained a forfeiture provision whereas the promissory note provided for acceleration of the debt upon default. The district court in *Hensley*, in a summary judgment decision, gave the sellers the election of either enforcing the forfeiture or proceeding to judgment on the amount due under the terms of the note. The sellers opted to obtain judgment on the balance due on the note. On appeal, the purchasers argued that the distinct remedies in the contract and note were ambiguous, requiring extrinsic evidence to determine the intent of the parties. In affirming the district court, we held that the default provisions, when considered together, were not ambiguous but rather that they afforded the sellers alternative remedies.

We believe that a consideration of the various default provisions involved in the instant case compels the same conclusion. We agree with the district court that there is no ambiguity, that the remedy provided by the purchase agreement is permissive, and that appellees were entitled to alternative remedies under the terms of the agreement.[7]

A further and more basic question, however, is presented by this case. The question, which was neither reached by the district court nor directly briefed by the parties, is whether the transaction at issue represents an installment land contract or a

---

7. Cases reaching a similar result, although generally referring to situations where only one remedy was expressly provided, include: *Anderson v. Long Grove Country Club Estates, Inc.*, 111 Ill.App.2d 127, 249 N.E.2d 343 (1969) (where forfeiture provision in contract is not exclusive, seller may seek any other legal remedy available to him); *Lonas v. Metropolitan Mortgage and Securities Company*, 432 P.2d 603 (Alaska 1967) (seller not limited to remedy of forfeiture provided in the contract where that remedy was not made exclusive); *Kathman v. Wakeling*, 69 Wash.2d 195, 417 P.2d 840 (1966)

(a remedy provided in a contract is to be considered permissive rather than exclusive, unless made exclusive in the contract either expressly or by necessary implication). *See also* Annotation, *Provision in land contract for pecuniary forfeiture or penalty upon default of the purchaser as affecting the vendor's right to maintain an action for the purchase price*, 32 A.L.R. 617 (1924) (it is frequently held that forfeiture provision does not preclude vendor from maintaining an action for the purchase price or an action upon a note or other obligation given for the purchase price).

conveyance with a mortgage back. The significance of this determination can readily be seen. If the agreement represents a conveyance with a mortgage back, the forfeiture provision was unenforceable. *See generally* E. Rudolph, *The Wyoming Law of Real Mortgages* at 147 (1969) (cornerstone of mortgage law is rule that prohibits contemporaneous release or waiver of the equity of redemption—rule operates to nullify any agreement made at the time of the mortgage providing for forfeiture upon default). A mortgagee's only remedy upon mortgage default is foreclosure and public sale, either by power of sale pursuant to Wyo.Stat. §§ 34–4–101 to –113 (1977) or by judicial sale in accordance with Wyo.Stat. §§ 1–18–101 to –112 (1977). *L Slash X Cattle Company, Inc. v. Texaco, Inc.*, 623 P.2d 764 (Wyo.1981). *See also Marple*, 750 P.2d at 1318, n. 2 (in case of equitable mortgage, foreclosure was the remedy— not quiet title). Additionally, in contrast to the finality and harshness of a forfeiture, in a mortgage transaction the mortgagor has a statutory right of redemption pursuant to § 1–18–103(a), which applies to foreclosure sales pursuant to judicial decree, execution, or power of sale. *See Fitch v. Buffalo Federal Savings and Loan Association*, 751 P.2d 1309 (Wyo.1988). Conversely, when a transaction is accomplished by means of an installment land contract, the seller, while often able to enforce a forfeiture provision, is not entitled to a deficiency. *Baldwin v. McDonald*, 24 Wyo. 108, 156 P. 27 (1916).

In an installment land contract, the seller agrees to accept payments from the purchaser, generally by a series of installments over time, until the purchase price as established by the contract has been paid. When the contract price has been paid, the seller must deliver a deed to the purchaser. *Insurance Company of North America v. Ventling*, 771 P.2d 388 (Wyo. 1989); E. Rudolph, *supra* at 147–48. Prior to the final installment payment and delivery of the deed, the seller retains legal title. *Id.; Baldwin*, 156 P. 27; 7 R. Powell, *The Law of Real Property* ¶ 938.20[1]

(1989). Although the purchaser usually is given the right to possession, his interest in an installment land contract is equitable, not legal. *Insurance Company of North America,* 771 P.2d 388; *Baldwin,* 156 P. 27.

The fundamental difference distinguishing a mortgage from an installment land contract, at least in states applying a lien theory to mortgages,[8] is that, in a mortgage, fee title has vested in the purchaser/mortgagor. *Marple*, 750 P.2d 1315; *Baldwin*, 156 P. 27. When a question as to the nature of the transaction arises, however, and in order for a court to find a mortgage, it must be shown that the parties intended a mortgage transaction rather than an installment land contract; i.e., there must have been an intent to create a security, as construed from the written agreement and the surrounding circumstances. *Angus Hunt Ranch, Inc. v. Reb, Inc.*, 577 P.2d 645 (Wyo.1978); *Baldwin*, 156 P. 27. *See also* 7 R. Powell, *supra,* ¶ 938.20[3] at 84D–13 (installment land contract not the functional equivalent of a mortgage absent clear proof that parties intended to create a mortgagor-mortgagee relationship (citing *Angus Hunt Ranch, Inc.*)).

In the instant case, we have little difficulty determining that the transaction created a mortgage. The agreement included a mortgage back to appellees/sellers expressly stated to be security for the underlying debt. The intent to create a security is clear. The intent to create a security arrangement is also evidenced by the security agreement and financing statement executed in connection with the personalty involved in the transaction. Further, we have said that "a security interest arrangement, in case of doubt, should be defined as a mortgage in order to protect all parties by denial of forfeiture and affording statutory rights of redemption." *Marple*, 750 P.2d at 1318.

Although, by the nature of the transaction, title to the property is somewhat diffi-

---

**8.** Wyoming has long adhered to the mortgage lien theory. *Marple,* 750 P.2d 1315; *Robinson* *Merc. Co. v. Davis,* 26 Wyo. 484, 187 P. 931 (1920).

cult to trace,[9] we are satisfied that fee title to the property was transferred to the buyer; i.e., Cliff & Co., Ltd. The transaction was basically a stock transaction. The corporation had title to the property. The corporate stock, corporate seal, corporate records, and resignations of appellees as officers and directors of the corporation were transferred to appellant Cliff & Co., Ltd. at closing. Simultaneously, and somewhat inexplicably, appellant Cliff & Co., Ltd. executed an assignment back of the stock to appellees by means of what was referred to as a "slip assignment." We confess we are somewhat at a loss as to the intended effect of this assignment back. It is not apparent from the record whether or not the assignment back was placed in the escrow account for reconveyance upon default, although we might assume that it was considering the concurrent mortgage, security agreement, and change of corporate officers and directors, all of which indicate the purchasers assumed ownership and control of the corporation.[10] To the extent this assignment back creates some doubt as to title ownership of the property, however, such doubt is resolved by the corporation's subsequent conveyance of the property to appellant Cliff & Co., Ltd. by warranty deed. The warranty deed was recorded, evidencing record ownership of the property in appellant Cliff & Co., Ltd. Fee title thus vested in the buyer, thereby foreclosing any potential status of the agreement as an executory sales transaction. *Marple*, 750 P.2d at 1318. Accordingly, the forfeiture provision in the agreement was a nullity.

In conclusion, we hold that there are no genuine issues of material fact and that appellees were entitled to foreclosure and a deficiency judgment as a matter of law. The transaction at issue was in essence a conveyance with a mortgage back. Title to the subject property vested in appellant Cliff & Co., Ltd., and appellees were entitled to the remedy of foreclosure and sale, including a deficiency judgment, upon the purchaser's default on the underlying debt. The forfeiture remedy contained in the purchase agreement, and urged by appellants as the sole remedy, was in fact not available to appellees in this mortgage transaction as a matter of law, regardless of what was contemplated by the parties at the time of contracting. Although the deficiency judgment certainly imposes a substantial hardship on appellants, we are convinced that, under the terms of this agreement, had the default occurred in an economic climate where property values were increasing, appellants would have undoubtedly and rightfully insisted upon the protections afforded by a mortgage foreclosure, as opposed to urging forfeiture.

Appellants' other issue concerns the finding of the district court that the parties were sophisticated businessmen. Appellants assert this finding is not supported in the record. While appellants' contention is correct, we agree with appellees that the sophistication of the parties, or lack thereof, is not material here where our interpretation of the parties' agreement is made from the language of the instruments themselves, in conjunction with applicable law, without resort to extrinsic evidence to determine the parties' intent.

Affirmed.

---

**9.** The unorthodox mix of conveyancing documents in this case is similar to that which this Court encountered in the *Marple* case, wherein we described the sales documents as curious and convoluted. *Marple*, 750 P.2d at 1317–18.

**10.** The 1986 liquor license assignment to appellees in connection with the "Modification Agreement" also indicates ownership of the property and assets of the business by the buyer.